POLINO and PINTO, P.C.
Attorneys at Law
Moorestown Times Square
720 East Main Street, Suite 1C
Moorestown, NJ 08057
Telephone (856) 727-1777
Attorneys for Plaintiff

| | | |
|---|---|---|
| JENNIFER A. GALLAGHER | : | SUPERIOR COURT OF NEW JERSEY |
| | | BURLINGTON COUNTY |
| Plaintiff | : | LAW DIVISION |
| | | |
| v. | : | DOCKET NO. BUR-L-2873-12 |
| | | Civil Action |
| JOHN M. MAKOWSKI; PLUMBERS | : | |
| LOCAL UNION 690 SUPPLEMENTAL | | |
| RETIREMENT PLAN; THOMAS | : | |
| J. McNULTY; JOHN I. KANE; | | |
| THOMAS J. CROWTHER; TIMOTHY | : | |
| J. BRINK; HOWARD WEINSTEIN; | | |
| JOHN J. BEE | : | |
| | | FOURTH |
| Defendants | : | AMENDED COMPLAINT |

Plaintiff Jennifer A. Gallagher, residing at 112 Blair Avenue, Berlin, New Jersey,

08009, by way of Third Amended Complaint against the defendants, says:

## FIRST COUNT

1.  Defendant John M. Makowski has been an attorney at law of the State of New

Jersey since 1984 and has offices at Greentree Executive Campus, 4003 Lincoln Drive West,

Suite C, Marlton, New Jersey.

2.  Defendant represented plaintiff in a divorce action filed in the Superior Court

of New Jersey, Chancery Division, Family Part, Camden County, Docket Number FM-04-1621-10 entitled <u>Jennifer A. Brooks v. Gary P. Brooks, Jr.</u> A Final Judgment of Divorce was entered on June 27, 2011 and an Amended Final Judgment of Divorce was entered on July 26, 2011.

3.     The divorce action was tried by the Court on June 8, 9, 22 and 27, 2011 and the Court rendered an oral decision on the record on June 27, 2011.

4.     The Trial Judge found that plaintiff's ex-spouse Gary P. Brooks. Jr. (Brooks) was incarcerated at the time of the trial and entry of the original Judgment of Divorce. He participated in the trial by being transferred from the prison to the court and then back again. He had previously threatened plaintiff and the minor children of the marriage, was institutionalized and the Court denied him visitation with the minor children, once he was released from prison, until he complied with all conditions contained in a prior final restraining order entered under the New Jersey Domestic Violence Act and made an application to the Court for visitation.

5.     The Trial Judge also ordered:

a.     that Brooks immediately repay any and all money taken by him from the savings accounts of the minor children;

b.     that the coverture portion of Brooks' defined benefit pension (Pension Plan) with the Plumbers Local 690 was to be divided equally between the plaintiff and Brooks utilizing a QDRO, the cost of preparation to be divided equally;

c.     that the date of Complaint balance and all accrued interest in Brooks' Plumbers Local 690 supplemental retirement plan (SRP) with his union was to be divided

between plaintiff and Brooks equally utilizing a QDRO, the cost of which was to be divided equally;

        d.    that Brooks' one-half interest in the aforesaid SRP was to be frozen by the Plan Administrator pursuant to the provisions of the Amended Judgment of Divorce and held until further Order of the Court.

      6.    Defendant prepared both the original and an Amended Judgments of Divorce. On July 6, 2011 defendant sent a form of Amended Judgment of Divorce to the Trial Judge advising that Brooks had been released from prison the previous week and that the defendant would forward the Amended Judgment to Brooks at his parents' house under the Five Day Rule pursuant to Rule 4:42-1(c).

      7.    Prior to July 6, 2011 Brooks provided a copy of the original Judgment to the Administrator of the SRP and requested a withdrawal from the SRP.

      8.    The Administrator sent a letter to Brooks dated July 6, 2011 stating that the SRP was prepared to permit the withdrawal consistent with the terms of the plan, provided Brooks confirmed that there was no Property Settlement Agreement in effect or other understanding by which the plaintiff was to receive some or all of the account balance of the SRP which might limit the amount Brooks could withdraw from SRP at that time.

      9.    Brooks signed a statement on July 8, 2011 that plaintiff was not entitled to an assignment of all or any portion of the SRP arising under a Property Settlement Agreement or otherwise, although this was not true.

      10.    The Administrator of the SRP permitted Brooks to withdraw one-half of the balance of the SRP of approximately $23,000.

3

11.     On August 24, 2011 the attorney for the SRP, William Denmark, forwarded a letter to the defendant (in response to a letter defendant had written to the SRP the previous week which had disclosed to the Plan Administrator that, in fact, there was a judgment in effect by which plaintiff was entitled to a share of Brooks' account balance) stating the Brooks had withdrawn one-half of the balance of the SRP prior to receipt of defendant's letter, but that one-half was still available to the plaintiff.  The attorney for the plaintiff advised that defendant should be receiving forms for qualified domestic relations orders for the SRP and the defined benefit pension plan for use in submitting QDRO's to both plans.

12.     On September 8, 2011 defendant forwarded a letter and copy of a draft QDRO to the SRP Administrator which provided that one-half the SRP would be paid to the wife and the other half frozen pending further Order of the Court.  The letter asked that the QDRO be reviewed and the Administrator advise if it was acceptable.  This letter did not include a draft QDRO for the pension plan.

13.     On October 25, 2011 the SRP Administrator forwarded a letter directly to the plaintiff advising that the QDRO states she is to receive fifty percent of the balance of the SRP as of May 5, 2010 and that the amount that has been transferred to her name was $24,857.61.  The letter also enclosed forms for the plaintiff to complete if she wished to withdraw that sum.

14.     Plaintiff completed the forms and forwarded them to the Plan Administrator in November 2011 and the sum of $24,857.61 was thereafter released to the plaintiff.

15.     To date, it appears that the QDRO for the pension plan has never been presented to and executed by the Court and served on the Plan Administrator.

4

16.    The defendant was negligent in his representation of the plaintiff in the divorce action by failing to protect plaintiff's interests in the SRP and the pension plan.

17.    Defendant's negligence includes but is not limited to the following:

a.    Defendant failed to take all steps necessary to assure that plaintiff's interests in the SRP would not be distributed to Brooks.  These steps include but are not limited to failure to notify the Plan Administrator in the proper manner of plaintiff's interest in the SRP, failure to timely notify the Plan Administrator of plaintiff's interest in the SRP and pension plan, failure to serve upon the Plan Administrator those documents necessary under the Employee Retirement Income and Security Act to prevent distribution to Brooks of plaintiff's interest in the SRP and secure plaintiff's interest in the pension plan and preparing and permitting a Judgment of Divorce to be executed without any reference to plaintiff's interest in the SRP or pension plan.

b.    The defendant should have known or anticipated that Brooks would attempt to withdraw the funds from the SRP based upon Brooks' prior conduct, all of which defendant was aware, which includes but is not limited to the following:

I.    The plaintiff and Brooks separated in March 2010.  While Brooks was institutionalized in the Lakeland mental facility, he called the Police and Fireman's Credit Union and had all the funds in a joint account in plaintiff's and Brooks' names transferred to another account which he controlled.  The transfer was for a sum of about $9,000.  Plaintiff had written checks to the IRS to pay taxes owed because Brooks had withdrawn money from an annuity that year. The checks sent to the IRS were dishonored by the bank.

ii.      Also while at Lakeland, Brooks contacted the same credit union and had the credit union transfer funds out of two minors' accounts set up for the two minor children of the marriage, Sean and Eric, which totaled approximately $1,152.04.

iii.      After the plaintiff and Brooks separated, Brooks called a bank which had financed the purchase of a travel trailer and told the bank to repossess the trailer, all without consulting with or obtaining permission from the plaintiff.  This resulted in a deficiency judgment of more than $12,000 against plaintiff.

iv.      Brooks hacked into plaintiff's email and changed her address so she would not receive any credit card bills so she would default in payments.

v.      Brooks stole the license plates off plaintiff's car and refused to return them, even after being ordered to do so by the Court.

vi.      Brooks constantly called and harassed plaintiff at work in violation of the restraining order.

vii.      Brooks violated the restraining order 11 times and is now serving a five year prison term for doing so.

viii.      Brooks refused to execute the deed to the residence transferring his interest to plaintiff in accordance with the Court's Order.

ix.      Brooks served time in Holmesburg Prison for assaulting his girlfriend by hitting her with a mug and permanently disfiguring her in 1983.

x.      Brooks was convicted of assault on a police officer, among other crimes, in 1990.

xi.      Brooks spent time in mental institutions at Kennedy Hospital

6

and Lakeland and attempted suicided several times.

        d.     Failure to advise plaintiff of what courses of action or alternatives were available to her.

    18.    As a direct and proximate result of the negligence of the defendant, plaintiff has suffered damages.

    WHEREFORE, plaintiff demands judgment against the defendant for compensatory damages, interest, costs, attorneys fees and whatever other relief the Court deems equitable and just under the circumstances.

## SECOND COUNT

    19.    Plaintiff repeats the allegations of the First Count of this Third Amended Complaint and incorporates the same as if set forth at length herein.

    20.    Plaintiff Jennifer A. Gallagher (f/k/a Brooks) is the ex-spouse of Gary P. Brooks, Jr. (Brooks) who was an active participant and beneficiary of the Plumbers Local Union No. 690 Supplemental Retirement Plan (Plan) with offices at 2791 Southampton Road, Philadelphia, PA 19154.  It is one of a group of multi-employer benefit plans as that term is defined in 29 U.S.C.S. 1102(3) and (37), which group of plans is known as the Plumbers Local Union 690 Industry Funds of Philadelphia and Vicinity (Industry Funds) at the same location.

    21.    According to the Plan, it was established and maintained according to the provision of an agreement and declaration of trust effective January 1, 1986 by and between the Plumbing and Heating Supply House Employers Association and the Plumbers Union Local 690 (Union) as that term is defined under 29 U.S.C.S. 152(5).  The Industry Fund

plans are provided for in various collective bargaining agreements between the Union and various employers and/or associations thereof.

22.     The Plan states it was adopted by the Board of Trustees of said Plan on January 1, 1986 for the purpose of providing retirement benefits to all persons to whom the Plan may be applicable at their respective retirements from active service upon the terms and conditions and rules of eligibility from time to time established by the Trustees. The Plan provides that it is intended to qualify as a profit sharing plan.

23.     The Plan provides that the Trustees shall be the named fiduciaries of the Plan referred to in Section 402(a)(1) of the Employee Retirement Income Security Act of 1974 (ERISA) and shall have the authority to control and manage the operation and administration of the Plan.

24.     Although the Plan itself does not name a specific administrator, the Industry Funds are administered by Thomas J. McNulty who is also one of the Union Trustees on the Plan's Board of Trustees. The other Union Trustees are John I. Kane and Thomas J. Crowther. The employer Trustees are Timothy J. Brink, Howard Weinstein and John J. Bee. (All of these Trustees shall be referred to hereinafter as "Trustees".)

25.     Plaintiff's claims arise under 29 U.S.C.S. 1132(a)(1)(Budget) as a civil action to recover benefits due to her under the terms of the Plan, to enforce her rights under the terms of the Plan and clarify her rights to future benefits under the terms of the Plan. As such, jurisdiction is proper in this Court pursuant to 11 U.S.C. 1132(e)(1) providing for concurrent jurisdiction in State courts for claims pursuant to 11 U.S.C. 1132(a)(1)(Budget).

26.     Plan Article 6.3 requires any application for withdrawal of funds before

8

retirement be made on a form approved by the Trustees and be approved by the Plan Trustees. The Trustees shall review the applications for withdrawal at their regularly scheduled meetings which are held quarterly in March, June, September and December of each year. In order for the application to be considered at the meeting, it must be received by the Industry Funds' office no later than 4:00 p.m. on the first business day of the month in which the meeting is held. The only exception (not applicable here) is set forth in Plan Article 6.5 in the event of financial hardship which application can be approved by the Co-Chairman of the Board of Trustees with such approval being reviewed by the Board of Trustees at the next regularly scheduled meeting.

27.     According to Plan Article 6.1(ii), if an employee participant is married, the withdrawal is subject to the written consent of his spouse who must acknowledge the effect of the election, and which must be witnessed by a Plan representative or notary public.

28.     Plan Article 7.7 (Administration) provides that the Trustees shall have the sole and absolute discretion to determine eligibility for benefits under the Plan and to construe or interpret provisions of the plan and the agreement/declaration of trust and to make factual determinations with respect thereto. Benefits under the Plan are set forth in Plan Article 4 which consist of normal retirement, early retirement, disability retirement, death and severance.

29.     Pursuant to Plan Article 7.5, benefits under the Plan cannot be assigned except to comply with a Qualified Domestic Relations Order (QDRO) if the order is determined to be a QDRO as defined in Section 414(b) of the Internal Revenue Code.

30.     Sometime after the Court entered the Judgment of Divorce on June 27, 2011

9

and before July 6, 2011, Brooks presented the said Judgment of Divorce to the Industry Funds' office and requested withdrawal of fifty percent of the balance of his Plan account. On July 6, 2011, the Plan, by letter on Industry Funds' letterhead, executed by Thomas J. McNulty as Administrator, advised Brooks that the funds would be released provided that he confirm there was no property settlement agreement in effect or other understanding by which plaintiff, as former spouse, is entitled to receive some or all of Brooks' account balance in the Supplemental Retirement Plan which might limit the amount Brooks could withdraw. The letter asked Brooks to sign a confirmation printed at the bottom of the letter confirming that the plaintiff was not entitled to any assignment of any portion of Brooks' Plan balance. Upon execution of the confirmation, the withdrawal process would be commenced (Exhibit A).

31. Brooks executed the Certification on July 8, 2011 (Exhibit A) and the Fund office permitted him to withdraw one half of his account balance, this according to a letter from the Plan's attorney to plaintiff's former divorce counsel dated August 24, 2011 (Exhibit B). That letter also stated the funds were released to Brooks before the Fund office received plaintiff's former divorce attorney's letter the week before, which included an Amended Judgment of Divorce dated July 26, 2011 indicating that the plaintiff was to receive fifty percent of Brooks' Plan balance utilizing a QDRO and that the remaining one half was to be frozen by the Plan Administrator until further Order of the Court.

32. On September 26, 2012 plaintiff's attorney sent a letter by regular and certified mail to McNulty requesting an appeal of the denial of plaintiff's claims. That letter also outlined those documents of which plaintiff was in possession and requested copies of

any other documents pertinent to the matter (Exhibit C).

33.     On October 5, 2012 the Plan's attorney forwarded a letter (Exhibit D) to plaintiff's attorney advising, among other things, that (1) pursuant to the request for additional pertinent documents, enclosed is the September 20, 2011 letter sent by the Plan attorney to plaintiff's former divorce counsel after receiving the proposed QDRO (Exhibit E); and (2) stating although the request for review was outside the Plan's sixty day appeal period, as an accommodation given the change in plaintiff's counsel, the Board of Trustees would review the denial and restoration of the funds in accordance with Section 7.2(b) of the Plan at the next regularly scheduled meeting, which would be December 21, 2012.

34.     On December 21, 2012 the Plan Administrator McNulty sent a letter to plaintiff's counsel advising the Board of Trustees would not restore the money to the Plan and advising of plaintiff's rights to file a civil action under Section 502(a) of ERISA (Exhibit F).  The decision stated that upon receipt of Brooks' written confirmation, the Plan allowed him to withdraw one half of his account balance and it was not until several weeks after the release of these funds that plaintiff's former divorce counsel sent the Amended Judgment of Divorce to the Plan counsel's office (and the Funds' office, Exhibit B).

35.     Pursuant to 29 U.S.C. 1103(a), all assets of an employee benefit plan shall be held in trust by one or more trustees who shall have exclusive authority and discretion to manage and control the assets of the plan.

36.     The Plan's attorney, William Denmark, advised plaintiff's counsel that if Brooks had been represented by an attorney in the divorce action, that attorney would have been contacted by the Fund's office before Brooks would have been permitted to withdraw

the monies in his account to verify Brooks' statement that plaintiff had no interest in the account. He also advised that plaintiff's divorce counsel was not contacted before the withdrawal although his name, address and telephone number appeared on the Judgment of Divorce presented to the Plan Administrator by Brooks.

37.     The Plan does not grant the Plan Administrator or an individual Trustee discretionary authority in the management, control or administration of the Plan or any other matter relating to the Plan.

38.     The Plan Trustees and Administrator have all arbitrarily and capriciously or contrary to law breached the obligations to the plaintiff under the Plan by:

    a.     refusing to recognize a valid QDRO and freeze the subject funds until further order of the State court;

    b.     failing to segregate the subject funds on plaintiff's behalf under Plan Article 7.A.10 until a QDRO acceptable to the Plan was submitted;

    c.     permitting Brooks to withdraw the subject funds from the Plan by use of procedures which violate the Plan documents and instruments which govern the Plan; that is, those set forth in Plan Article 6 which include but are not limited to failure to obtain an application and failure to present the application to the Board of Trustees at its regular quarterly meeting;

    d.     failing to properly inquire and investigate Brooks' claims for withdrawal prior to the withdrawal;

    e.     relying solely on Brooks' written confirmation as set forth in the letter he signed stating plaintiff was not entitled to an assignment of all or a portion of his account

in the Plan whether arising under a property settlement agreement or otherwise;

        f.    refusing to correct the actions taken by the Administrator which were in violation of the terms of the Plan; and

        g.    engaging in such other conduct unknown to the plaintiff.

39.    As a direct and proximate result of such conduct and/or omissions which were arbitrary and capricious and/or contrary to law and incorrect, plaintiff has been damaged.

WHEREFORE, plaintiff demands judgment against the Plan, the Trustees and the Administrator for compensatory damages, pre-judgment interest, attorneys fees and litigation expenses permitted under ERISA, costs and any other relief the Court deems equitable and just under the circumstances.

## THIRD COUNT

40.    Plaintiff repeats the allegations of the first two Counts of the Third Amended Complaint and incorporates the same by reference as if set forth at length herein.

41.    The fiduciaries of the Plan have a duty to provide benefits and administer the Plan solely in the interests of the participants and beneficiaries with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

42.    The Trustees and Administrator breached their fiduciary duty to the plaintiff by:

        a.    refusing to recognize a valid QDRO and freeze the subject funds until further order of the State court;

b.      failing to segregate the subject funds on plaintiff's behalf under Plan Article 7.A.10 until a QDRO acceptable to the Plan was submitted;

c.      permitting Brooks to withdraw the subject funds from the Plan by use of procedures which violate the Plan documents and instruments which govern the Plan; that is, those set forth in Plan Article 6 which include but are not limited to failure to obtain an application and failure to present the application to the Board of Trustees at its regular quarterly meeting;

d.      failing to properly inquire and investigate Brooks' claims for withdrawal prior to the withdrawal;

e.      relying solely on Brooks' written confirmation as set forth in the letter he signed stating plaintiff was not entitled to an assignment of all or a portion of his account in the Plan whether arising under a property settlement agreement or otherwise;

f.      refusing to correct the actions taken by the Administrator which were in violation of the terms of the Plan; and

g.      engaging in such other conduct unknown to the plaintiff.

43.     The Trustees and Administrator knowingly participated in and acquiesced in the conduct giving rise to the breach and/or failed to make reasonable efforts under the circumstances to remedy the breach.

44.     The Trustees and Administrator did not use reasonable care to prevent Co-Trustees from committing the breach and in jointly managing and controlling the assets of the Plan.

45.     As a result of the breach, the Trustees and Administrators are personally liable

14

in accordance with the provisions of 29 U.S.C.S. 1109(a).

46.   As a direct and proximate result of said breach, the plaintiff has suffered damages.

WHEREFORE, plaintiff demands judgment against the Plan, the Trustees and the Administrator for compensatory damages, pre-judgment interest, attorneys fees and litigation expenses permitted under ERISA, costs and any other relief the Court deems equitable and just under the circumstances.

## FOURTH COUNT

47.   Plaintiff repeats the allegations of the first three Counts of the Fourth Amended Complaint and incorporates the same by reference as if set forth at length herein.

48.   On or about July 11, 2011, the Plan claims it received a two page application signed by Brooks on July 8, 2011 entitled "Special Withdrawal - Application for a Withdrawal from Supplemental Retirement Plan" seeking to withdraw $24,856.00.  The form was prepared by the Plan and stated it had to be returned to the Plan office by September 1, 2011.  The Plan office personnel had typed in numbers on the application setting forth the balance in the Plan and the amount of the requested withdrawal.

49.   Brooks filled in the identification information on page 1 of the application in his handwriting and checked the box on page 2 of the application which stated he was making a hardship withdrawal for "medical expenses described in IRC 213(d) incurred by the participant's spouse or any dependents of the participant".

50.   The section of page 2 that provided for the participant to explain the financial condition which requires him to receive an immediate hardship withdrawal was left blank by

15

Brooks.

51.    Based on his application, the hardship withdrawal was approved and disbursement of Plan funds was made to Brooks on July 13, 2011 by check made payable to Brooks in the sum of $19,884.80.  The Plan withheld the sum of $4,979.20 for federal income taxes, an amount which equals twenty percent of the gross amount of the withdrawal.

52.    This withdrawal was approved and ratified by the Plan Trustees as a hardship withdrawal at the regular quarterly meeting on September 23, 2011.

53.    Plaintiff requested from the Plan's attorney a copy of any supporting documentation evidencing that Brooks in fact needed a hardship withdrawal for the purposes he claimed in his application, or for any other reason.

54.    On February 7, 2013, plaintiff's counsel was advised by the attorney for the Plan that there was no other documentation other than the application.  The withdrawal was permitted because Brooks, who was no longer employed and therefore not entitled to the health insurance benefits provided by the union, would now have to obtain his own medical insurance.  In fact, he advised that because of the down economy, this was the reason many of the hardship withdrawals were approved by the Trustees.

55.    The Plan permits for hardship withdrawals pursuant to paragraph 6.5 in the event that a participant demonstrates financial hardship to the satisfaction of the Co-Chairman of the Board of Trustees and permits withdrawal of up to 100 percent of the participant's Plan balance.  The Board of Trustees then approves or disapproves the application at the next regularly scheduled quarterly meeting even though the money had already been disbursed.

16

56.    The Plan acknowledges the Trustees are named fiduciaries of the Plan referred to in Section 402(a)(1) of ERISA and the distribution shall be made in accordance with the applicable provisions of the Internal Revenue Code and Treasury regulations.

57.    Distributions from the Plan are governed by 26 U.S.C. 401(k) and hardship distributions are permitted under 26 U.S.C. 401(k)(2)(B)(i)(IV) subject to the regulations of the Secretary of Treasury permitted by 26 U.S.C. 401(m)(9).

58.    Hardship withdrawals are permitted pursuant to 26 C.F.R. 1.41(k)-1(d) only if the distribution is made on account of an immediate and heavy financial need of the participant and is necessary to satisfy the financial need.  The determination of the existence of an immediate and heavy financial need in the amount necessary to meet the need must be made in accordance with non-discriminatory and objective standards set forth in the Plan. Whether a participant has an immediate and heavy financial need is to be determined based on all the relevant facts and circumstances.

59.    The said Treasury regulation provides that the hardship distribution may not exceed the amount of the need and the request for hardship distribution is not treated as necessary to satisfy an immediate and heavy financial need to the extent the need may be relieved from other resources that are reasonably available to the employee.

60.    The Plan violates the provisions of the above Treasury regulations as it does not set forth any non-discriminatory and objective standards upon which the decision to permit a hardship withdrawal must be made.  In fact, no standards are provided upon which to make the decision other than an undefined financial hardship.

61.    The decision to permit Brooks' hardship withdrawal violated the Plan since it

initially was not made by the Co-Chairman of the Board of Trustees and it was approved by the Board of Trustees after the Plan office had received the Qualified Domestic Relations Order.

62.     The decision to permit Brooks' hardship withdrawal violated the Plan as it was not made in accordance with non-discriminatory and objective standards set forth in the Plan.

63.     The decision to permit Brooks' hardship withdrawal violated the said Treasury Regulation because neither the Co-Chairman nor the Board of Trustees considered all the relevant facts and circumstances, nor conducted a sufficient investigation of them.

64.     The decision to permit Brooks' hardship withdrawal violated the said Treasury regulation because neither the Co-Chairman nor the Board of Trustees determined whether it was based on an immediate and heavy financial need and whether it was necessary to satisfy that need, whether it exceeded the amount of the need, and whether the need could have been relieved by other resources that were reasonably available to the employee as required by the said Treasury regulation.

65.     The decision to grant Brooks' hardship application was made arbitrarily and capriciously, was the result of grossly negligent conduct or negligent conduct and was deliberately, knowingly and intentionally made in violation of the Plan, the said Treasury regulation and other applicable laws.

66.     The conduct of the Board of Trustees, the Board's Co-Chairman and Administrator in this regard breached the fiduciary duty which they owed to the beneficiaries and participants of the Plan.  In addition, they failed to take any reasonable efforts to

18

remedy the breach, they did not use reasonable care to prevent Co-Trustees from committing the breach and in jointly managing and controlling the assets of the Plan. As a result, they are personally liable in accordance with the provisions of 29 U.S.C. 1109(a).

67.      As a direct and proximate result of said breach, the plaintiff has suffered damages.

WHEREFORE, plaintiff demands judgment against the Plan, the Trustees and Administrator for compensatory and punitive damages, prejudgment interest, attorney's fees and litigation expenses permitted under ERISA, costs and any other relief the Court finds equitable and just under the circumstances.

POLINO and PINTO, P.C.

By: _____
Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date:  February 19, 2013

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I am aware of no other parties who should be made a part of this action at the present time.

POLINO and PINTO, P.C.

By: _____
Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date:  February 19, 2013

19

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues in accordance with the Rules of this Court.

POLINO and PINTO, P.C.

By:_____
Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date:  February 19, 2013

## DESIGNATION OF TRIAL COUNSEL

Jm is hereby designated as trial counsel for plaintiff in this action.

POLINO and PINTO, P.C.

By:_____
Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date:  January 25, 2013

20

# *Plumbers Local Union 690 Industry Funds*

### *of Philadelphia and Vicinity*

**2791 SOUTHAMPTON ROAD, PHILADELPHIA, PA 19154**

THOMAS J. McNULTY
*Administrator*

(215) 677-0600
FAX: (215) 677-9936

July 6, 2011

*RECEIVED*
JUL 1 1 2011

Mr. Gary P. Brooks, Jr.
4 Hetton Ct.
Glassboro, NJ 08028

Re:   Divorce From Jennifer A. Brooks

Dear Mr. Brooks:

Thank you for furnishing us with your Divorce Decree issued by the Superior
Court of New Jersey effective June 27, 2011. We understand that you are seeking to
make a withdrawal from the Plumbers Local Union No. 690 Supplemental Retirement
Plan (SRP).

We are prepared to allow you to make this withdrawal, consistent with the terms
of the SRP, provided that you confirm that there is no property settlement agreement in
effect, or other understanding, by which your former spouse, Jennifer A. Brooks, is
entitled to receive some or all of your account balance in the SRP and which might limit
the amount you can withdraw from the SRP at this time.

On the line indicated below, please confirm that your former spouse is not entitled
to an assignment of any portion of your SRP as a result of your divorce proceeding.
After you confirm this by signing and dating below, we will then initiate the withdrawal
process. Thank you.

Very truly yours,

Thomas J. McNulty
ADMINISTRATOR

TJM/kh

By signing below, I hereby confirm to the Plumbers Local Union No. 690 Supplemental
Retirement Plan that my former spouse, Jennifer A. Brooks, is not entitled to an
assignment of all or any portion of my account in the Plumbers Local Union No. 690
Supplemental Retirement Plan, whether arising under a property settlement agreement or
otherwise.

Dated: July 8, 2011

Gary P. Brooks, Jr.



A



**JACOBY DONNER** P.C.

ATTORNEYS AT LAW

William A. Denmark, Esquire
wdenmark@jacobydonner.com

August 24, 2011

John M. Makowski, Esquire
Greentree Executive Campus
4003 Lincoln Drive West
Suite C
Marlton, NJ  08053

Re:     Brooks v. Brooks –
        Plumbers Local Union No. 690 Industry Funds

Dear Mr. Makowski:

I am writing to you in my capacity as co-counsel to the Plumbers Local Union No. 690 Industry Funds in response to your letter to the Fund office dated August 16, 2011.  As you probably know, I reached out to your office last week and spoke to your paralegal regarding this matter.

As I indicated in my phone conversation with your paralegal, Gary Brooks had submitted to the Fund office in late June a copy of a Divorce Decree issued by Judge Rand confirming the effective date of divorce as being June 27, 2011. Based on the divorce, Mr. Brooks requested a withdrawal of a share of his funds held in the Supplemental Retirement Plan.  Precisely because the Plan was not aware whether there may exist a settlement agreement arising out of the divorce which would require an assignment of some or all of Mr. Brook's interest in the Supplemental Retirement Plan to his former spouse (your client), the Plan required that Mr. Brooks, as a condition to withdrawing funds from the Supplemental Retirement Plan, confirm in writing that his former spouse had no entitlement to a share of his interest in this Plan.  I enclose a copy of the Fund Administrator's letter to Mr. Brooks dated July 6, 2011 and Mr. Brook's written acknowledgement dated July 8, 2011, at the bottom of the letter, in which he confirms that your client was not entitled to an assignment of any portion of his interest in the Supplemental Retirement Plan.  Based on the Plan's receipt of Mr. Brooks' confirmation, the Fund office allowed Mr. Brooks to withdraw one-half of his account balance in this Plan, and this was accomplished before the Fund office received your letter last week disclosing that in fact there is a Judgment in effect by which your client is entitled to a share of Brooks' Plan account balance.

{00119406;v1}

A Pennsylvania Professional Corporation
A Member of Lawyers Associated Worldwide

*ladelphia*
) Market Street
e 3100
adelphia, PA 19103
563.2400
215.563.2870

*Jersey\**
Gate Center
'ellowship Road
200
aurel, NJ 08054
78.2500
09.278.0505
*ppointment Only*

*'a*
'awford Street
.00
outh, VA 23704
7.8768
7.337.8769

cobydonner.com



JACOBY DONNER P.C.
ATTORNEYS AT LAW

John M. Makowski, Esquire
August 24, 2011
Page 2

However, there remains in the Supplemental Retirement Plan account one-half of the original balance (approximately $23,000) which will remain available for distribution to your client.  You should be receiving from the Fund office forms of qualified domestic relations orders to be used both with respect to the Supplemental Retirement Plan and the Pension Plan.  The correct name of each Plan is as follows:

Plumbers Local Union No. 690 Pension Plan

Plumbers Local Union No. 690 Supplemental Retirement Plan

I note that in the Amended Judgment for Divorce, there is a provision requiring that the defendant's one-half interest in the Supplemental Retirement Plan be "frozen" by the Plan Administrator.  Regrettably, as I just indicated, that share was already released based on the written undertaking provided by Gary Brooks.  I would like to discuss this matter with you further, and feel free to call me at your convenience.  Thank you.

Very truly yours,

William A. Denmark

WAD/kh

cc:    Mr. Thomas J. McNulty (w/o enc.)

## POLINO and PINTO, P.C.

Attorneys at Law
Moorestown Times Square
720 East Main Street, Suite 1C
Moorestown, NJ 08057

Joseph F. Polino
Joseph M. Pinto*

*Also a Member of PA Bar

Telephone (856) 727-1777
Telecopier (856) 727-1546
jfpolino@prodigy.net

September 26, 2012

Thomas J. McNulty, Administrator
Plumbers Local Union 690 Industry Funds
 of Philadelphia and Vicinity
2791 Southampton Road
Philadelphia, PA 19154

*Via Certified and
Regular Mail*

RE:   **Jennifer A. Gallagher (formerly known as Brooks)
        Ex-Spouse of Member Gary P. Brooks, Jr.**

Dear Mr. McNulty:

I represent Jennifer A. Gallagher.  Please accept this letter as a request for a review of the
denial of benefits from the Supplemental Retirement Plan.  The facts known to date are as
follows.

On July 6, 2011 you forwarded a letter to member Gary P. Brooks, Jr. which acknowledged
receipt of a Judgment of Divorce dated June 27, 2011 and his request to withdraw funds
from the SRP.  You agreed to release funds to him as long as there was no Property
Settlement Agreement or other understanding which would limit his rights to withdraw the
monies.  He executed a statement to that effect on July 8, 2011.

According to your attorney, William Denmark, who advised me of the following facts during
a recent telephone conversation, since Mr. Brooks was not represented by an attorney, you
had him sign the statement.  Had he been represented by an attorney, you would have called
that attorney to verify his statement.  You did not call John Makowski, the attorney for the
ex-spouse, although the attorney's name, address and telephone number appears on the
aforesaid Judgment of Divorce.

On August 24, 2011 your attorney wrote to Mr. Makowski advising that since the SRP was
not aware of the Property Settlement Agreement, and Mr. Brooks signed the statement to

C

Thomas J. McNulty, Administrator
Plumbers Local Union 690 Industry Funds
   of Philadelphia and Vicinity
September 26, 2012
Page two

confirm none existed, you released the money to him.

On September 8, 2011 Mr. Makowski forwarded you a form of a Qualified Domestic Relations Order for the balance of the funds in the SRP and asked that you review the same for acceptability.

You responded to Ms. Gallagher directly on October 25, 2011 with forms to be completed so monies from the plan could be disbursed to her.  According to your attorney, Mr. Denmark, these forms were completed, returned and the funds were released.

On October 21, 2011 an Order was executed in the divorce action entering a judgment against Gary Brooks for the monies he unlawfully withdrew from the plan.

I am in possession of the following documents; if there are any other documents pertinent to this matter, please forward copies to me:

1.    Judgment of Divorce dated June 27, 2011;
2.    Amended Judgment of Divorce dated July 26, 2011;
3.    Court Order of October 21, 2011;
4.    Letter from John Makowski to the Court dated July 6, 2011;
5.    Letter from Plumbers Local Union to Gary Brooks dated July 6, 2011;
6.    Letter from William Denmark, Esquire to John Makowski, Esquire dated August 24, 2011;
7.    Letter dated September 8, 2011 from Makowski to the Plan with copy of QDRO, unsigned and undated;
8.    Letter dated October 25, 2011 from Plan Administrator to ex-spouse with SRP history; and
9.    Participant Distribution Election form for Jennifer A. Gallagher signed November 5, 2011 for $24,857.61, with direct rollover request.

Please advise when a decision has been made.

Very truly yours,

JOSEPH M. PINTO
JMP:dm

cc:    Ms. Jennifer A. Gallagher

# JACOBY DONNER P.C.
### ATTORNEYS AT LAW

William A. Denmark, Esquire
wdenmark@jacobydonner.com

OCT – 9 2012

October 5, 2012

**Philadelphia**

1700 Market Street
Suite 3100
Philadelphia, PA 19103
215.563.2400
Fax: 215.563.2870

Joseph M. Pinto, Esquire
720 East Main Street
Suite 1C
Moorestown, NJ  08057

Re:   Jennifer A. Gallagher (formerly known as Jennifer A. Brooks),
      And Gary P. Brooks, Jr.
      <u>Plumbers Local Union No. 690 Supplemental Retirement Plan</u>

Dear Mr. Pinto:

**New Jersey***

East Gate Center
109 Fellowship Road
Suite 200
Mt. Laurel, NJ 08054
609.278.2500
Fax: 609.278.0505
*By Appointment Only*

I am writing to you on behalf of the Plumbers Local Union No. 690
Supplemental Retirement Plan ("SRP") in response to your letter to the Fund
Administrator dated September 26, 2012 and as a follow-up to our recent phone
conversations on October 2 and October 3, 2012.  As you note in your letter, Mr.
Brooks had provided my client in late June, 2011 a copy of his Divorce Decree which
made no reference to a property settlement agreement with his former spouse.  Mr.
Brooks sought to withdraw a share of the funds in his SRP account.  At the time of
his request, the SRP had no notice of the existence of a property settlement agreement
or of a contemplated assignment of a share of Brooks' SRP account under a Qualified
Domestic Relations Order.  However, out of an abundance of caution, the SRP
required Mr. Brooks, as a condition to receiving a share of his SRP funds, to confirm
in writing that his former spouse was not entitled to an assignment of any portion of
his interest in the SRP.  As you correctly note, Mr. Brooks signed a representation to
that effect, after which funds were released to Mr. Brooks in accordance with the
terms of the SRP.

**Virginia**

555 Crawford Street
Suite 200
Portsmouth, VA 23704
757.337.8768
Fax: 757.337.8769

A number of weeks later, in August, 2011, my client received a copy of an
Amended Judgment which, for the first time, indicated that, in addition to an
assignment of one-half of the SRP account of Brooks to the former spouse (which
assignment has been implemented), the remaining half (which had already been
released to Mr. Brooks) was to be "frozen" by the Plan Administrator.

www.jacobydonner.com

Apart from the fact, as we had previously indicated, that the SRP had done
nothing improper by releasing funds to Mr. Brooks, it is important to note that we do
not believe that the freezing of a share of an account balance in the SRP, as

{00163637;v1}



A Pennsylvania Professional Corporation
A Member of Lawyers Associated Worldwide



## JACOBY DONNER P.C.
### ATTORNEYS AT LAW

Joseph M. Pinto, Esquire
October 5, 2012
Page 2

contemplated by the Amended Judgment, is consistent with the terms of ERISA and other legislation governing this plan.

    In accordance with your request that I provide you with any additional documents pertinent to this matter, I now enclose a copy of a letter dated September 20, 2011 which I sent to John Makowski after receiving a draft of the Qualified Domestic Relations Order for the SRP. In that letter, you will note that I state that we do not believe a provision authorizing the freezing of a participant's share in the SRP is permissible, and that we likely could not have implemented that clause even if we had received notice in a timely manner.

    Notwithstanding all of this, I understand from your September 26, 2012 letter that you are asking for a further review of the decision of the SRP not to restore to the SRP for your client's benefit (and hold in suspension) the funds that were released to Mr. Brooks.

    Although your request for review is being made more than sixty (60) days after the SRP confirmed its prior actions, as an accommodation given the change of counsel that has occurred, the Board of Trustees of the SRP will review the initial denial of the restoration of the funds that had been released to Mr. Brooks, in accordance with Section 7.2(b) of the SRP, at the next regularly scheduled meeting of the Trustees.

    For your information, the Trustees meet on a quarterly basis and the next meeting will convene on Friday, December 21, 2012. This matter will be placed on the agenda of the meeting of the Trustees at that time, and the outcome of that review will be provided in a timely manner in accordance with the Plan. Between this date and the December 21 Trustees' meeting, you have the right to submit any further written comments, documents and other information pertaining to this matter. Thank you.

        Very truly yours,

        William A. Denmark

WAD/kh

cc:   Mr. Thomas J. McNulty

{00163637;v1}

# JACOBY DONNER P.C.
## ATTORNEYS AT LAW

William A. Denmark, Esquire
wdenmark@jacobydonner.com

*OCT - 9 2012*

September 20, 2011

iladelphia

)0 Market Street

ite 3100

iladelphia, PA 19103

..563.2400

:: 215.563.2870

r Jersey*

t Gate Center

 Fellowship Road

e 200

 Laurel, NJ 08054

278.2500

.609.278.0505

*Appointment Only*

inia

Crawford Street

e 200

smouth, VA 23704

337.8768

 757.337.8769

.jacobydonner.com

John M. Makowski, Esquire
Greentree Executive Campus
4003 Lincoln Drive West
Suite C
Marlton, NJ 08053-1523

   Re:   Brooks v. Brooks
         <u>Plumbers Local Union No. 690 Supplemental Retirement Plan</u>

Dear Mr. Makowski:

   As you are aware, I am co-counsel to the Plumbers Local Union No. 690 Supplemental Retirement Plan. The Plan Administrator has forwarded to me your letter of September 8, 2011 and the draft QDRO which you enclosed with that letter.

   On behalf of the Supplemental Retirement Plan, I have reviewed the draft QDRO and find that it is satisfactory except in one respect. As you correctly noted in your letter, the last sentence of Section 3 of the draft Order provides that the balance of the Participant's account not being assigned to the Alternate Payee shall be "frozen" pending further Order of the Court and not be payable to the Participant in accordance with the terms of the Plan.

   This sentence needs to be deleted from the final Order for two (2) reasons. First, as previously noted, based on a written statement provided by Mr. Brooks (which the Plan only later learned was false), the share of the Plan not being assigned to your client was already distributed to Mr. Brooks and therefore cannot be held as directed in that provision of the Order.

   Second, even if the remaining share of the Participant's account was still held by the Plan, I do not believe a provision providing for the freezing of a Participant's share is permissible under the terms of ERISA and the Internal Revenue Code. In any event, that clause cannot be implemented and therefore needs to be deleted from the final draft of the Order.

{00122071;v1}



A Pennsylvania Professional Corporation

A Member of Lawyers Associated Worldwide



# JACOBY DONNER P.C.
## ATTORNEYS AT LAW

John M. Makowski, Esquire
September 20, 2011
Page 2


         Subject to the preceding, the draft Order you provided is satisfactory and
can be finalized and then forwarded to the Plan Administrator for implementation.
Thank you.

                              Very truly yours,

                              William A. Denmark

WAD/kh

cc:     Mr. Thomas J. McNulty

# Plumbers Local Union 690 Industry Funds

### of Philadelphia and Vicinity

**2791 SOUTHAMPTON ROAD, PHILADELPHIA, PA 19154**

THOMAS J. MCNULTY
*Administrator*

(215) 677-6900
FAX: (215) 677-6936

December 21, 2012

Joseph M. Pinto, Esquire
Polino & Pinto, P.C.
Moorestown Time Square
720 East Main Street
Suite 1C
Moorestown, NJ 08057-3058

DEC 2 6 2012

Re:   Jennifer A. Gallagher (formerly known as Jennifer A. Brooks)
      and Gary P. Brooks, Jr.
      Plumbers Local Union No. 690 Supplemental Retirement Plan

Dear Mr. Pinto:

I am writing to you in my capacity as Administrator of the Plumbers Local Union No. 690 Supplemental Retirement Plan ("Plan") in response to your request that the Board of Trustees of the Plan review and reconsider its previous determination <u>not</u> to restore to the Plan, for the benefit of Ms. Gallagher, funds that had previously been released to Gary P. Brooks, Jr.

By way of background, Gary Brooks provided my office in late June of 2011 a copy of his divorce decree (dated June 27, 2011) which made no reference to a Property Settlement Agreement with his former spouse. Mr. Brooks requested the withdrawal of a share of the funds in his Plan account. Although the Plan had no knowledge of the existence of a Property Settlement Agreement which might affect Mr. Brooks' interest in the Plan, it required him, as a condition to receiving funds from the Plan, to confirm in writing this his former spouse was not entitled to any portion of his interest in the Plan. Upon receipt of Mr. Brooks' written confirmation, the Plan allowed Brooks to withdraw one-half of his account balance in the Plan as is permitted under the terms of the Plan.



210

Joseph M. Pinto, Esquire
December 21, 2012
Page 2

It was not until several weeks after the release of these funds that your client's initial counsel (John M. Makowski, Esquire) sent to my office an "Amended Judgment for Divorce" which required that Brooks' interest in the Plan be divided equally between him and your client, and that Brooks' one-half interest in the Plan (which had already been released to him) be "frozen" by my office and held subject to further order of the Court.

After receipt of this Judgment, Plan counsel advised Mr. Makowski that the Plan could not "freeze" the one-half share allocable to Mr. Brooks as such share had already been released to him. The Plan did release to Ms. Gallagher the one-half share of the Plan account allocable to her, and in accordance with the terms of a Qualified Domestic Relations Order.

On Friday, December 21, 2012, a meeting of the Board of Trustees of the Plan convened and the Trustees considered your request (on behalf of Ms. Gallagher) that funds representing the one-half share of the Plan account released to Mr. Brooks be restored to the Plan and be "frozen" by my office pending further order of the Court, in accordance with the terms of the Amended Judgment for Divorce. After careful review and deliberation on this matter, the Trustees have decided, on a unanimous basis, not to restore to the Plan funds representing the one-half share of Mr. Brooks' Plan account that had been previously released to him. This determination was based on two considerations:

1. First, and most importantly, the Plan acted properly and responsibly, in releasing Brooks' one-half interest, in accordance with the terms of the Plan, based upon the fact that (i) the initial Divorce Decree made no reference to the existence of a Property Settlement Agreement and the Plan had received no notice of an assignment of the Plan account, and

POLINO and PINTO, P.C.
Attorneys at Law
Moorestown Times Square
720 East Main Street, Suite 1C
Moorestown, NJ 08057
Telephone (856) 727-1777
Attorneys for Plaintiff

| | | |
|---|---|---|
| JENNIFER A. GALLAGHER | : | SUPERIOR COURT OF NEW JERSEY |
| | | BURLINGTON COUNTY |
| Plaintiff | : | LAW DIVISION |
| | | |
| v. | : | DOCKET NO. BUR-L-2873-12 |
| | | Civil Action |
| JOHN M. MAKOWSKI; PLUMBERS | : | |
| LOCAL UNION 690 SUPPLEMENTAL | | |
| RETIREMENT PLAN; THOMAS | : | |
| J. McNULTY; JOHN I. KANE; | | |
| THOMAS J. CROWTHER; TIMOTHY | : | |
| J. BRINK; HOWARD WEINSTEIN; | | |
| JOHN J. BEE | : | |
| | | |
| Defendants | : | **CERTIFICATION OF SERVICE** |

I, Joseph M. Pinto, Esquire of full age, hereby certify that on the 19th day of February

2013, I caused to be served by U.S. first class mail, postage prepaid, a true and correct copy

of the foregoing Fourth Amended Complaint upon John M. Makowski, Esquire, Greentree

Executive Campus, 4003 Lincoln Drive, Suite C, Marlton, NJ 08053.

I hereby certify that the foregoing statements made by me are true. I am aware that if

any of the foregoing statements made by me are wilfully false, I am subject to punishment.

POLINO and PINTO, P.C.

By:_____
Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date:  February 19, 2013