Liam Y. Braber, Esq.  (LB4210)
lbraber@jacobydonner.com
JACOBY DONNER, PC   A Pennsylvania Professional Corp.
1700 Market St.   Suite 3100
Philadelphia, PA 19103
215.563.2400 (tel.)
215.563.2870 (fax)

Attorney for Defendants Plumbers Local 690 Supplemental Retirement Plan, Thomas J. McNulty, John I. Kane, Thomas J. Crowther, Timothy J. Brink, Howard Weinstein, John J. Bee.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY – CAMDEN VICINAGE

| | | |
|---|---|---|
| JENNIFER A. GALLAGHER, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 13-CV-1103 |
| | : | Removed from NJ Superior Court |
| JOHN M. MAKOWSKI, et al., | : | |
| Defendants | : | **MOTION DAY: Dec. 16, 2013** |

### BRIEF OF
### PLUMBERS 690 SUPPLEMENTAL RETIREMENT PLAN, THOMAS J. McNULTY, JOHN I. KANE, THOMAS J. CROWTHER, TIMOTHY J. BRINK, HOWARD WEINSTEIN, JOHN J. BEE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY THE FUND DEFENDANTS

TO:   John M. Makowski, Esq.
Greentree Executive Campus
4003 Lincoln Drive West, Suite C
Marlton, NJ  08053

Joseph M. Pinto, Esq.
Polino and Pinto, PC
Moorestown Times Square
720 E. Main Street, Suite 1C
Moorestown, NJ 08057

{00202702;v1}

**TABLE OF CONTENTS**

I.  INTRODUCTION……………………………………………………………… 1

II. STATEMENT OF FACTS…………………………………………………… 1

III. LEGAL ARGUMENT…………………………………………………….. 4

   A.  The Chapter 7 Bankruptcy Discharge Renders Plaintiff Unable to Prosecute Claims Later For Her Own Benefit…………………. 4

   B.  Plaintiff Never Presented A Qualified Domestic Relations Order (QDRO) Entitling Her To Any Portion of Mr. Brooks' Half of the SRP………………………………………………………………… 5

IV. CONCLUSION…………………………………………………………..8

## TABLE OF AUTHORITES

**Statutes**
11 U.S.C. §541 ............................................................................................................ 4
18 U.S.C. §152 ............................................................................................................ 4
29 U.S.C. § 1056(d) ................................................................................................. 5-7

**Cases**
Boggs v. Boggs, 520 U.S. 833, 846-57 (1997) ........................................................... 5
Eddings v. Eddings, 2010 WL 1576468, at *3 (N.D.Cal. 2010) ............................. 5-7

## I.  INTRODUCTION

Defendants Plumbers Local 690 Supplemental Retirement Plan (the "SRP"), Thomas J. McNulty, John I. Kane, Thomas J. Crowther, Timothy J. Brink, Howard Weinstein, John J. Bee (all together, the "Fund Defendants"), hereby file this Brief in Support of the Fund Defendants' own independent Motion for Summary Judgment, and also hereby join movant Defendant John M. Makowski in his companion Motion for Summary Judgment, which is currently pending before This Court.[1]

## II.  STATEMENT OF FACTS

The SRP is a labor union benefit plan administered under the Employee Retirement Income Security Act (ERISA). The affirmative facts recited in the instant motion relate to records of the SRP from July 2011 through December 2011, which have been produced in discovery, and which are attested to be true and correct per the Certification of Administrator Thomas J. McNulty, attached hereto. See McNulty Certification, attached.  The SRP further incorporates its Local Rule 56.1 Statement.

### A. The SRP Account in the Name of Gary Brooks.

The facts recited as to the SRP are undisputed.   At the outset, for clarity the SRP will distinguish the two "halves" of Mr. Brooks' SRP account, which in June 2011 totaled $49,713.61 (See Appendix, Exhibit A, PLU00298):

1)  Plaintiff Gallagher's half, which she was awarded and has received, and

---

[1] This Brief is substantially identical to the Brief In Support of Defendant Makowski's Motion for Summary Judgment filed by the Fund Defendants on Oct. 7, 2013.  Plaintiff has complained that the Fund Defendants' Supporting Brief raises collateral issues to which Plaintiff has not been given time to respond.  Rather than argue the obvious – that Plaintiff could have responded anytime in the last 6 weeks – the Fund Defendants hereby file their own Motion independently, in order to eliminate even the most remote possibility of prejudice to Plaintiff.

2) Mr. Brooks' half, which is the subject of this litigation – and which was distributed to him on July 13, 2011, and in which there has never been an order presented that awarded Ms. Gallagher any interest.

On July 8, 2011, after presenting his Divorce Decree to the SRP, Plaintiff's ex-spouse Mr. Brooks completed the required hardship application and signed a certification stating that no property settlement agreement awarded his ex-spouse any portion of his SRP account. (See Appendix, Exhibit B, PLU00289-297). On July 13, 2011, the SRP permitted Mr. Brooks to withdraw his half, the amount of $24,856.00 with $4,971.20 deducted for taxes and the applicable early withdrawal penalty, from his balance of funds held in the SRP. See id. Thus, $24,856.00 remained in the SRP account under Mr. Brooks' name, which amount is not in dispute and would later be claimed by Ms. Gallagher and distributed to her.

As admitted in both Defendant Makowski's and Plaintiff Gallagher's pending Summary Judgment papers, it was not until September 8, 2011, that Plaintiff submitted to the SRP a domestic relations order seeking release of funds to her – two months after Mr. Brooks had already withdrawn his half of the SRP. (See Appendix, Exhibit C, PLU00354-361) (See also Plaintiff's Rule 56.1 Statement, ¶¶7-12.)  This Order recited two things:  1) it awarded the remaining half of Mr. Brooks' balance in the SRP to Ms. Gallagher, and 2) it ordered Mr. Brooks' half to be "frozen" pending further orders of the Court (this half, unknown to the family court, had already been withdrawn by Mr. Brooks on July 13, 2011). Id.  In November-December 2011, the SRP transferred Ms. Gallagher's Half to her – the amount of $24,856.00 less taxes and fees of $4,971.20 – which half is not the subject of this dispute.

Paper discovery is over.[2] The SRP does not have any QDRO (or other order of any kind) awarding Mr. Brooks' Half of his SRP account to Plaintiff Gallagher. Certainly if any such document existed, it would be presented. Instead, the only order upon which Plaintiff relies is the order to "freeze" Mr. Brooks' half pending further order of the court – the same order that was presented on September 8, 2011 to the SRP. Id.

### B. Plaintiff's Bankruptcy Petition of June 2012.

The Fund Defendants did not participate in or have knowledge of Plaintiff's 2012 Chapter 7 Bankruptcy. However, as to the claims against SRP, Plaintiff's Bankruptcy Petition fails to list:

1) Any claim against the SRP as to Mr. Brooks' half of the SRP account, or

2) Any claim for punitive damages, interest, attorneys fees, or other liquidated amounts related to such claim against the SRP. (See Appendix, Exhibit D, also appearing at Exhibit H to Makowski's Motion, and in Plaintiff's response appendix).

Instead, Plaintiff relies entirely upon a transcript of questioning of Plaintiff by the Chapter 7 Bankruptcy Trustee. (See Appendix, Exhibit E, also appearing at Makowski's Motion, Exhibit J, pp. 2-3). There, the Trustee asserted the statutory right to any damages for use in the bankruptcy estate. The colloquy went as follows:

> Trustee: Are you suing, other than a child support issue, are you suing anyone or thinking about it?
> Jennifer A. Gallagher: Thinking about it.
> Trustee: Are you really? For what?
> JAG: Yes, the Plumbers Local 690. It was court ordered that I was to get my husband's annuity. It was to be frozen and they basically handed him the check for my part that I was supposed to get.

---

[2] Per Nov. 13, 2013 Order of Judge Donio, discovery is stayed so that depositions may be held after pending dispositive motions are decided.

3

…

<u>Trustee</u>:  But if you're going to liquidate it, I get part of the money and you need to notify me and your attorney.  Do you understand?

<u>JAG</u>:  Yes.

<u>See id</u>.   In the current action, Plaintiff seeks money damages, not only including the principle amount, but punitive damages, attorneys' fees, interest and other liquidated amounts.  <u>See Fourth Amended Complaint</u>.

### III.  LEGAL ARGUMENT.

Judgment should be entered in favor of the Fund Defendants and Plaintiff's case dismissed entirely as a matter of law.

#### A.  The Chapter 7 Bankruptcy Discharge Renders Plaintiff Unable to Prosecute Claims Later For Her Own Benefit.

Chapter 7 Bankruptcy is a reckoning.  Under Federal Law, Plaintiff is afforded the benefit of protection against creditors, but the quid-pro-quo for such protection is that she assigns all non-exempt assets and all claims to bear upon her situation in order for the assigned Trustee to distribute fairly.  <u>See 11 U.S.C. §541</u>.  A debtor is not permitted to ignore or conceal assets for later personal use – in fact, it's a criminal offense.  <u>See 18 U.S.C. §152</u>.

It is axiomatic that the present claims, whatever their value, existed well prior to Ms. Gallagher's June 2012 Bankruptcy Petition.  The relevant occurrences cover July 2011 through December 2011, with not only communications to counsel, but to Ms. Gallagher herself.  (See Appendix, Exhibits A-C).

4

Therefore, it appears to the Fund Defendants that the plain question on this issue is whether the present case is properly brought on behalf of Plaintiff's bankruptcy estate, with participation of the U.S. Trustee, to benefit her creditors.   The Fund Defendants need not recite Summary Judgment Movant Makowski's caselaw, but it appears equally plain that the present case was not brought, and is not maintained, under any auspices of any bankruptcy proceedings, or on behalf of Plaintiff's bankruptcy estate, or on behalf of the U.S. Trustee.   This is a run-of-the-mill civil action for liquidated money damages – including interest, attorneys' fees, punitive damages, and other fungible monetary amounts that were not made part of Plaintiff's bankruptcy estate for the benefit of her creditors. <u>See Fourth Amended Complaint</u>.

On that basis, judicial estoppel should apply to prevent Plaintiff from attempting to manipulate both the bankruptcy process and the civil action process for personal benefit.  The Fund Defendants thus join Defendant Makowski's Motion for Summary Judgment, currently pending.

**B.    Plaintiff Never Presented A Qualified Domestic Relations Order (QDRO) Entitling Her To Any Portion of Mr. Brooks' Half of the SRP.**

As a separate grounds for judgment as a matter of law, Plaintiff cannot prevail in establishing that she is litigating on behalf of her bankruptcy estate because she has no colorable claim. There exists nowhere in the record any QDRO (or any other order) entitling Plaintiff to Mr. Brooks' Half of the SRP (as opposed to the half which was in fact distributed to Ms. Gallagher).

A QDRO is the only method by which a state Family Court may award to one person the assets in a fund maintained under the auspices of the Employee Retirement

Income Security Act (ERISA) on behalf of another person.  29 U.S.C. §1056(d)(3)(B); Boggs v. Boggs, 520 U.S. 833, 846-57 (1997) (confirming that state orders not approved through the QDRO process are preempted by federal law).  ERISA imposes strict "anti-alienation" limitations upon its subject funds. 29 U.S.C. §1056(d).  Without a QDRO, the amounts in such funds cannot be alienated, transferred, assigned, awarded or executed upon by anyone.  See Boggs, at 850; see also 29 U.S.C. §1056(d)(3)(A)-(F); see also Eddings v. Eddings, 2010 WL 1576468 (N.D.Cal., 2010).

As admitted by all parties, it was not until September 8, 2011, that Plaintiff submitted its purported QDRO seeking release of funds to Plaintiff Gallagher – months after Mr. Brooks had already withdrawn his half of the SRP.  (See Exhibit C).   The submitted Order did two things:  1) it awarded half of Mr. Brooks' balance in the SRP to Ms. Gallagher, and 2) it ordered Mr. Brooks' half (which had already been withdraw by Mr. Brooks in July 2011) to be "frozen" pending further orders of the Court.  Id.

The Order to "freeze" Mr. Brooks' half is a nullity – as it does not identify a specific alternate payee, and therefore does not qualify as a QDRO.  It is preempted by ERISA.  A domestic relations order qualifies as a QDRO if it "creates or recognizes the existence of an *alternate payee's* right to, or assigns to an *alternate payee* the right to, receive all or part of the benefits payable with respect to a participant under a[n ERISA] plan[.]" 29 U.S.C. § 1056(d)(3)(B).   An *alternate payee* is "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K).  Once a QDRO is obtained, ERISA requires that the "alternate payee," rather than the current spouse, be treated as if

6

he or she were the current spouse "[t]o the extent provided in" the QDRO. 29 U.S.C. § 1056(d)(3)(F).

An order must contain a requisite degree of specificity as to the alternative payee to qualify as a QDRO. 29 U.S.C. §§ 1056(d)(3)(C) and (D). Critically, Subparagraph (C) states that:

> A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies-
> …
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

29 U.S.C. §§ 1056(d)(3)(C). The pension plan itself is responsible for determining whether the order meets the above requirements. 29 U.S.C. §1056(d)(3)(G)(i)(II).

The Order presented here – stating that Mr. Brooks' half is to be "frozen" pending further orders of the state court – simply cannot qualify as a QDRO. (Exhibit C). The frozen assets have no alternative payee, no percentage awarded, and no number of payments or period of payments. Frozen assets are simply in limbo without a destination.

In fact, not only does a "freeze" order not qualify as a QDRO, but the SRP opens itself to potential liability for breach of contract and breach of fiduciary duty for placing ERISA funds in such suspension. In the <u>Eddings</u> case, the Fund actually did commit to a "temporary freeze" on the member's assets until a QDRO was received, and the District Court suggested *sua sponte* that the ex-spouse amend his pleadings to include breach of contract and breach of fiduciary duty against the Fund itself:

7

> However, as the Court noted at the hearing, Plaintiff may be able to plead a claim for breach of contract or breach of fiduciary duty based upon the alleged promise of Defendants' predecessors-in-interest to freeze distribution of the benefits until receipt of a QDRO or other court order. Accordingly, leave to amend will be granted.

Eddings v. Eddings, 2010 WL 1576468, at *3 (N.D.Cal. 2010).

Accordingly, as no Qualified Domestic Relations Order applying to Mr. Brooks' half appears in the record, the remainder of the case is moot. Plaintiff has no right to protect, and no claim to distribute to the bankruptcy estate, and the case should be dismissed as a matter of law.

## IV.  CONCLUSION.

Therefore, in light of the foregoing, the Fund Defendants request that the Complaint be dismissed, with prejudice, and judgment be entered in favor of the Fund Defendants and against Plaintiff Jennifer A. Gallagher.

Respectfully submitted,

Date: 11/21/13                    /s/Liam Y. Braber

Liam Y. Braber, Esq.  (LB4210)
lbraber@jacobydonner.com
JACOBY DONNER, PC
A Pennsylvania Professional Corp.
1700 Market St.   Suite 3100
Philadelphia, PA 19103
215.563.2400 (tel.)
215.563.2870 (fax)

Attorney for Defendants Plumbers Local 690 Supplemental Retirement Plan, Thomas J. McNulty, John I. Kane, Thomas J. Crowther, Timothy J. Brink, Howard Weinstein, John J. Bee.