# UNITED STATE DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JENNIFER GALLAGHER | : | |
| Plaintiff | : | Honorable Joseph E. Irenas |
| v. | : | Civil Action No. 13-1103 (JEI/AMD) |
| JOHN M. MAKOWSKI, ESQUIRE; PLUMBERS LOCAL UNION 690 SUPPLEMENTAL RETIREMENT PLAN; et al. | : | |
| | : | |
| Defendants | : | |

**Plaintiff's Brief in Opposition to Defendant Plumbers Local Union 690
Supplemental Retirement Plan and Individual Plan Defendants'
Notice of Motion for Summary Judgment and in
Support of Plaintiff's Cross-Motion for Partial Summary Judgment**

Joseph M. Pinto, Esquire
Polino and Pinto, P.C.
720 East Main Street, Suite 1C
Moorestown, NJ 08057
(856) 727-1777 Telephone
(856) 727-1546 Telecopier
jfpolino@prodigy.net  Email
*Attorneys for Plaintiff*

Date:   December 20, 2013

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Appendix Table of Contents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The Defendant Plan's Motion Should Be Denied as the Doctrine of Judicial
        Estoppel Is Not Applicable Under the Facts of this Case  . . . . . . . . . . . . . . . . . . 3

II.     The Plan's Failure to Follow the Terms of the Plan and Applicable Law
        Regarding Hardship Withdrawals Resulted in an Erroneous Decision to Release
        the Disputed Account Balance to Brooks  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            The Hardship Distribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            Remedy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Table of Authorities

Chandler v. Social Security, 667 F.3d 356, 359 (3rd Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cigna Corp. v. Amara, 131 S.Ct. 1866 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Dennard v. Richards Group, Inc., 681 F.2d 306 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Doroshow v. Hartford Life, 574 F.3d 230, 233 (3rd Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 526 (3rd Cir. 2009) . . . . . . . . . . . . . . . . 19

Files v. Exxon Mobile Pension Plan, 428 F.3d 478, 489 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . 17

Firestone Tire v. Bruch, 489 U.S. 101, 115 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fotta v. Trustees of Un. Mine Wkrs., 319 F.3d 612 (3rd Cir. 2003),
cert. den,. 540 U.S. 982 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Freeburg v. Schweiker, 721 F.2d 445, 447 (3rd Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fries v. Reliance Standard, 122 F.Supp.2d 566, 574-575 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . 20

Hlinka v. Bethlehem Steel, 863 F.2d 279, 286 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Howley v. Mellon Financial, 625 F.3d 788, 794 (3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 19

Johnson v. Nanticoke Memorial Hospital, 700 F.Supp.2d 670, 677 (D. Del. 2010) . . . . . . . . . 18

Kopec v. Kopec, 70 F.Supp.2d 217, 220 (E.D. NY 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Kosiba v. Merck, 384 F.3d 58, 64-67 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

LaRue v. DeWolf Boberg and Assoc., Inc., 552 U.S. 248, 128 S.Ct. 1020 (2008) . . . . . . . . . . 21

Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Metropolitan Life v. Glenn, 554 U.S. 105 (2008), 128 S.Ct. 2343 (2008) . . . . . . . . . . . . . . . . 19

Miller v. American Airlines, 632 F3d 838, 845 (3rd Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mitchell v. Eastman Kodak, 113 F.3d 433, 437 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 13, 14

Moskalski v. Beyer Corp., 2008 W.L. 2096892 (W.D. Pa. 2008) at *4 and n.3 . . . . . . . . . . . . . 14

National City Corp. v. Ferrell, 2005 W.L. 2143984 *7 n.6 (ND W.Va. 2005) . . . . . . . . . . . . . 18

Pierre v. Conn. General, 932 F.2d 1552, 1557 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 8

Pinto v. Reliance Standard, 214 F.3d 377, 393-395 (3rd Cir. 2000)  . . . . . . . . . . . . . . . . . . . . 19

Post v. Hartford, 501 F.3d 154, 162 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Richardson v. Perales, 402 U.S. 389, 401 (1971)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rybarczyk v. TRW, Inc., 235 F.3d 975, 981, n.8 (6th Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . 15

Shvartsman v. Long Term Disability, 2012 W.L. 2118126 *8 (D. N.J. 2012) . . . . . . . . . . . . . 19

Skrelvedt v. E.I. DuPont, 372 F.3d 193 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Sullivan v. AT&T Corp., 372 Fed. Appx. 334*3 (3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 12

Sweeney v. Standard Insurance, 276 F.Supp.2d 388, 395 (E.D. Pa. 2003) . . . . . . . . . . . . . . . 20

Unicare v. Phanor, 472 F.Supp.2d 8 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Vitale v. La Trobe Area Hospital, 420 F.3d 278, 283-284 (3rd Cir. 2005)  . . . . . . . . . . . . . . . 12

Winters v. Kutrip, 47 Fed. Appx. 143, 147 (3rd Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


Employee Benefits Law, Section 2.02[6], page 2-9, Memorski, Jeffrey, Law Journal Press . . . . 7


26 C.F.R. §1.401(k)-1d(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26 C.F.R. §1.401(k)-1d(3)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 C.F.R. §1.401(k)-1d(3)(iii)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 C.F.R. §1.401(k)-1d(3)(iii)(B)(1-6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 C.F.R. §1.401(k)-1d(3)(iv)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 C.F.R. §1.401(k)-1d(3)(iv)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 C.F.R. §1.401(k)-1(d)(3)(iii)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iii

26 C.F.R. §1.401-1(b)(1)(ii)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26 C.F.R. §1.457-6(c)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. §2560.503-1(b)(5)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


IRC §213  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IRC §401(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

IRC §457(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IRC §410(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IRC §411  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IRC §412  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


Revenue Ruling 71-224, 1971 W.L. 26972 (1971)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


26 U.S.C. §402(c)(4)(C)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

26 U.S.C. §414(p)(1)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

26 U.S.C. §1104(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26 U.S.C. §3405(b)(1) and (2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 U.S.C. §105(6)(3)(B)(ii)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. §1056(d)(3)(G)(ii)(I-III)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 U.S.C. §1056(d)(3)(H)(ii)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 U.S.C. §1056(d)(3)(H)(v)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 U.S.C. §§1104-1114  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. §1104(1)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. §1104(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. §1104(a)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. §1109(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. §1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. §1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. §1132(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. §1132(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. §1201(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# APPENDIX TABLE OF CONTENTS

*Plaintiff relies upon the Appendix (Pa1-Pa364) (Court Doc. 30-3, 30-4) filed in opposition to defendant Makowski's Motion to Dismiss and incorporates the same by reference as if set forth at length herein.*

Plumbers Local Union No. 690 Supplemental Retirement Plan as Amended and Restated Effective January 1, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 365

Letter dated November 13, 2009 from The McKeogh Company to IRS . . . . . . . . . . . . . . . . . 412

IRS Form 5300, Application for Determination for Employee Benefit Plan . . . . . . . . . . . . . 414

IRS letter to Plan actuary and attorney dated April 27, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . 419

Letter dated May 6, 2011 from The McKeogh Company to IRS . . . . . . . . . . . . . . . . . . . . . . . 423

Amendment No. 1 to the Plumbers Local Union No. 690 Supplemental Retirement Plan as Amended and Restated Effective January 1, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 425

Letter dated August 13, 2011 from IRS to the Board of Trustees . . . . . . . . . . . . . . . . . . . . . . 428

Letter dated March 19, 2003 from IRS to Board of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . 431

Letter dated June 30, 2011 from the Plan to Gary Brooks . . . . . . . . . . . . . . . . . . . . . . . . . . . 434

SRP History for Gary Brooks dated June 30, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 435

Memo dated July 6, 2011 to Gary Brooks from the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . 436

Letter dated July 6, 2011 from the Plan to Gary Brooks with Brooks' signature undated . . . . 437

Letter dated July 6, 2011 from the Plan to Gary Brooks with Brooks' signature dated . . . . . . 438

Special Withdrawal Application for Withdrawal from SRP signed by Gary Brooks July 8, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 439

SRP Hardship Withdrawal - Additional Information Form . . . . . . . . . . . . . . . . . . . . . . . . . . . 440

W-4P for Gary Brooks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 441

Plumbers Local Union No. 690 Industry Funds approval form . . . . . . . . . . . . . . . . . . . . . . . . 443

Letter dated July 13, 2011 from the Plan to Gary Brooks enclosing check . . . . . . . . . . . . . . 444

vi

Check number 0094621 from the Plan to Gary Brooks in the amount of $19,884.80 . . . . . . . 445

Letter dated August 19, 2011 from the Plan to John Makowski, Esquire enclosing
four QDRO forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 446

Minutes of Trustees Meeting of September 23, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 447

Amended and Restated Agreement and Declaration of Trust of Plumbers Local
Union No. 690 Supplemental Retirement Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 455

26 C.F.R. §1.401-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 474

26 C.F.R. §1.401-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 475

Plaintiff's First Set of Interrogatories Addressed to Defendants and Answers . . . . . . . . . . . . 476

Plaintiff's First Request for Production of Documents Addressed to Defendants
and Answers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 485

Welfare Fund Death Benefit Form signed by Gary Brooks on June 8, 2011 . . . . . . . . . . . . . 489

Union Enrollment Card . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 490

Letter dated November 16, 2009 from the Plan to Brooks . . . . . . . . . . . . . . . . . . . . . . . . . . 491

Check number 727025 payable to Gary P. Brooks, Jr. in the amount of $1,472.00 . . . . . . . . 492

Direct Rollover Election by Participant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 493

Plan's Updated Data form for Gary Brooks' dated November 20, 1995 . . . . . . . . . . . . . . . . . 495

Permanent Record Card for Gary Brooks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 496

SRP History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 497

Order on Informal Application dated November 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . 498

Letter dated November 1, 2013 from defendants' counsel to Judge Donio . . . . . . . . . . . . . . 500

Email from Joseph M. Pinto, Esquire to Liam Braber, Esquire and responsive
email regarding depositions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 501

Certification of Joseph M. Pinto, Esquire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 503

## PROCEDURAL HISTORY

Plaintiff Jennifer Gallagher's (Plaintiff) initial Complaint was filed in the New Jersey Superior Court on October 11, 2012 alleging professional negligence against her divorce attorney, defendant John Makowski in connection with the handling of plaintiff's interest in one of her ex-husband's union retirement plans.

That Complaint was amended on January 13, 2013 to add exhibits that were inadvertently omitted from the initial filing.

The Complaint was amended a second time, on January 23, 2013, to add as defendants Plumbers Local Union 690 Supplemental Retirement Plan and its individual Trustees to assert claims against them under ERISA.

A Third Amended Complaint was filed on January 25, 2013 to correct the caption of the Second Amended Complaint which had omitted some of the Trustees' names which were set forth as defendants in the body of the Third Amended Complaint.

A Fourth Amended Complaint was filed on February 20, 2013 to add an additional count against the Plan and Trustees after additional information previously unknown to the plaintiff was received by plaintiff's attorney from the Plan's attorney.

Defendant Makowski filed an Answer to the Third Amended Complaint, as well as a Counterclaim against the plaintiff and Cross-Claims against the Plan and Trustees on or about February 4, 2013.  Plaintiff filed an Answer to the Counterclaim on February 7, 2013. Makowski filed an Answer to the Fourth Amended Complaint on or about February 22, 2013.

Plaintiff mailed to the Plan and Trustees the Third Amended Complaint and Summonses by regular mail on January 25, 2013 at its offices in Philadelphia, Pennsylvania.  Plaintiff's attorney also sent the Fourth Amended Complaint to the Plan's attorney on February 19, 2013.

The Plan and Trustees filed a Notice of Removal with this Court on February 25, 2013.

The Plan and its individual defendants (Plan) filed an answer to the Fourth Amended Complaint in this Court on March 3, 2013 asserting a cross-claim for indemnification and contribution against any other defendants or third party defendants. The Plan filed an Answer to Makowski's cross-claims on March 25, 2013.

Discovery then ensued. Defendant Makowski filed a motion for summary judgment on August 23, 2013 to which plaintiff timely responded. That motion is still pending. The Plan filed a brief in support of Makowski's motion on October 7, 2013, the return date of the motion . Plaintiff objected since she had no opportunity to respond (per letter to the Court dated October 7, 2013) (Pa500-502; Court Doc. 38-1).

An in-person status conference was held before Judge Donio on November 13, 2013. At that time, Judge Donio stayed discovery until Makowski's motion was decided. An Order was entered on November 13, 2013 staying discovery and provided new deadlines would be set for completion of pre-trial discovery after Makowski's motion was decided (Pa498). The Plan has consented to a deposition of its administrator if the motions are not dispositive in this case (Pa501).

On November 21, 2013, the Plan filed a motion for summary judgment on the same grounds as Makowski's, i.e., the application of judicial estoppel to the case. The Plan also raised a new issue arguing the plaintiff never presented a QDRO to the Plan entitling her to any portion of Brooks' share of the Plan.

Plaintiff now files this response to the Plan's motion and cross-moves for partial summary judgment against the Plan and its individual defendants.

2

## LEGAL ARGUMENT

**I.  The Defendant Plan's Motion Should Be Denied as the Doctrine of Judicial Estoppel Is Not Applicable Under the Facts of this Case.**

Defendant Plan and the individual defendants (hereinafter "Plan") raise the same two arguments raised by defendant Makowski in his motion, i.e., plaintiff's complaint should be dismissed on the grounds of judicial estoppel or because she is not a real party in interest (defendant's brief, pages 4-5; Court Doc. 41-1, pages 7-8).

Plaintiff addressed both of these issues in the brief submitted in opposition to defendant Makowski's motion.  Since the facts and arguments of the Plan are the same, plaintiff relies upon the analysis set forth in her previously submitted brief (see Court Doc. 30, pages 5-13) and the Plan's motion should be denied.

**II.  The Plan's Failure to Follow the Terms of the Plan and Applicable Law Regarding Hardship Withdrawals Resulted in an Erroneous Decision to Release the Disputed Account Balance to Brooks.**

The Plan also requests summary judgment stating the plaintiff has no colorable claim because there exists nowhere in the record any qualified domestic relations order (QDRO) (or any other order) entitling plaintiff to Brooks' one-half of his Plan account as opposed to the one-half distributed to the plaintiff (Plan's brief, page 5; Court Doc. 41-1, page 8).

The Plan contends (1) the draft QDRO submitted on September 8, 2011 by defendant Makowski (Pa85) could not qualify since that part of the order requiring Brooks' half to be frozen was a nullity as it does not identify a specific alternate payee (Plan's brief, page 6; Court Doc. 41-1, page 9); and (2) the Plan opens itself to potential liability for breach of contract and breach of fiduciary duty for placing ERISA funds in suspension (Plan's brief, page 7; Court Doc. 41-1, page 10).

3

Although the Plan is wrong on both counts, that is not the issue in the case.

Plaintiff submits that the Plan's decision to make a hardship distribution (1) was arbitrary and capricious as it lacked a factual basis, (2) was not made in accordance with the Plan terms, and (3) did not comply with the law under ERISA and the Internal Revenue Code (hereinafter "IRC").

Had the Plan acted correctly and followed the Plan terms and applicable law, the hardship distribution should have been denied.  Therefore, the funds would have still been in the Plan's possession when it received knowledge of the amended judgment of divorce and the draft QDRO and, under the Plan's own terms and ERISA law, it would have been required to hold the funds for at least 18 months if it believed an acceptable QDRO had not been presented.

**The Hardship Distribution**

To qualify under IRC §401(a), a profit sharing plan must provide a definite, pre-determined formula for allocating the contributions made to the Plan among the participants and for distributing  funds accumulated under the Plan after a fixed number of years, the attainment of a stated age or upon prior occurrence of some event such as lay-off, illness, disability, retirement, death or severance from employment.  26 C.F.R. §1.401-1(b)(1)(ii) (Pa474).

In Revenue Ruling 71-224, 1971 W.L. 26972 (1971) (Pa475), the IRS ruled that a profit sharing plan may include a provision for accelerated distributions because of hardship provided hardship is defined, related rules with respect thereto are uniformly and consistently applied and the distributable portion does not exceed the employees vested interest.  However, the distribution must be because of a bonafide hardship to fit within the ambit of 26 C.F.R. 1.401-1(b)(1)(ii) (Pa474-475).

4

The Plan is bound by these Code provisions and regulations per the terms of the Plan itself (Plaintiff's Statement of Facts [PSF], ¶¶45, 51-52) and by its qualification as a deferred compensation plan by the IRS (PSF, ¶62)

In approving this Plan, the IRS specifically required the Plan to define hardship and directed its attention to 26 C.F.R. 1.401(k)-1d(3) which contains rules applicable to hardship distributions (Pa421, ¶2; PSF, ¶60).

The Plan was then amended to define hardship as indicated in that regulation (Pa 409-411; 423-426).  See 26 C.F.R. §1.401(k)-1(d)(3)(iii)(B) setting forth six circumstances that will be deemed an immediate and financial need including expenses for (or necessary to obtain) medical care that would be deductible under IRC §213(d).

To provide guidance to plan administrators, the IRS has promulgated rules and regulations concerning the procedure to follow in considering hardship withdrawals from 401(k) plans.  While the Plan in this case is not a 401(k) plan because it does not include a cash deferred arrangement option (PSF47), the regulations provide insight into what would constitute acceptable procedures to be applied by an administrator in considering if a bonafide hardship exists, whether distribution should be made and if so, how much.

The IRS in its letter to the Plan of April 27, 2011 (Pa420-421) advising that to qualify as a deferred compensation plan, the plan had to define hardship, specifically referred the Plan to 26 C.F.R. §1.401(k)-1d(3)(iii)(B) concerning hardship distributions from 401(k) plans.  Hardship withdrawals are permitted under that regulation only if (1) the distribution is made on account of an immediate and heavy financial need (the events test), and (2) is necessary to satisfy the financial need (the needs test), 26 C.F.R. 1.401(k)-1d(3)(i).  This determination must be made in

accordance with non-discriminatory and objective standards set forth in the Plan (emphasis added).  Id.

Whether an employee has an immediate and heavy financial need is to be determined based on all the relevant facts and circumstances that can be deemed immediate and heavy even if it was reasonably foreseeable or voluntarily incurred by the employee.  26 C.F.R. 1.401(k)-1d(3)(iii)(A).  The regulation provides for needs which are deemed to be immediate and heavy (the so-called safe harbor provisions).  26 C.F.R. 1.401(k)-1d(3)(iii)(B)(1-6). It was these six items which the defendant Plan adopted in part by amendment to satisfy the IRS' request for a definition of hardship (Pa410).

A distribution is treated as necessary to satisfy an immediate and heavy financial need of an employee only to the extent the amount of the distribution is not in excess of the amount required to satisfy the financial need.  26 C.F.R. 1.401(k)-1d(3)(iv)(A).  A distribution is not treated as necessary to satisfy an immediate and heavy financial need of an employee to the extent the need may be relieved from other resources reasonably available to the employee and is generally made on the basis of all the relevant facts and circumstances.  26 C.F.R. 1.401(k)-1d(3)(iv)(B).  For purposes of this determination under subparagraph (B), the employee's resources are deemed to include those assets of a spouse and minor children that are reasonably available to the employee.

Additionally, for purposes of subparagraph (B), an immediate and heavy financial need generally may be treated as not capable of being relieved from other resources that are reasonably available to the employee if the employer relies upon the employee's representation made in writing or such other form as may be prescribed by the Commissioner unless the

employer has actual knowledge to the contrary, that the need cannot be reasonably relieved (1) through reimbursement or compensation by insurance or otherwise, (2) by liquidation of the employee's assets, (3) by cessation of elective contribution or employee contributions under the Plan, (4) by other currently available distributions and non-taxable loans under Plans maintained by the employer, or (5) by borrowing from commercial sources on reasonable commercial terms and in an amount sufficient to satisfy the need.

See also, 26 C.F.R. §1.457-6(c)(2) defining withdrawals for unforeseeable emergencies under IRC §457(b) plans as requiring determination on all facts and circumstances of each case but providing that such distribution may not be made if the emergency may be relieved through compensation or reimbursement from insurance or otherwise, liquidation of a participant's assets if liquidation would not cause a financial hardship or by cessation of deferrals under the Plan. Additionally, the distribution must be limited to the amount reasonably necessary to satisfy the need.

A plan may wish to use the deeming provisions of the regulation (the so-called safe harbor provisions) to help reduce the administrative burdens and fiduciary liability exposure encountered when a plan administrator has to make a discretionary determination as to whether a distribution is made on account of a participant's hardship.  Employee Benefits Law, Section 2.02[6], page 2-9, Memorski, Jeffrey, Law Journal Press.

Under the facts of this case, Brooks' application for a hardship distribution should not have been approved.

The Plan did not follow the dictates of its terms or the Treasury regulations in the approval process and failed to obtain sufficient facts to enable it to exercise the discretion

7

necessary to determine if there was a bona fide hardship.  "A plan administrator must make a determination that may be divided into two general categories.  Pierre v. Conn. General, 932 F.2d 1552, 1557 (5th Cir. 1991).  First, he must determine the facts underlying the claim for benefits.  See, Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir. 1989) - plan fiduciaries are responsible for assembling a factual record which will assist a court in reviewing the fiduciaries' actions.  Second, he must then determine whether those facts constitute a claim to be honored under the terms (emphasis added) of the plan.  See generally, Dennard v. Richards Group, Inc., 681 F.2d 306 (5th Cir. 1982)"; Pierre, supra, 932 F.2d at 1557.

Article VII of the Plan regarding regular and hardship withdrawals contains no rules for consideration of a hardship request which are to be uniformly and consistently applied.  The only requirement is that the application for withdrawal is subject to approval of the co-chairman of the Board of Trustees  with such approval reviewed by the Board of Trustees at its next regularly scheduled meeting (Pa388; ¶7.5(b)).  Nor has the Plan provided in discovery any other written rules for that purpose. If the rules are required to be applied in a uniform and consistent manner, the absence of such written rules makes it impossible to determine if that requirement was carried out.

The Plan has provided no documents in discovery to this point, other than Brooks' application and no other information in any answer to plaintiff's interrogatory requests to verify that Brooks' actually had a bonafide hardship.  Checking off a box on a form stating that the request was for medical expenses for his spouse (although he no longer had one) or his dependents is not enough information to ascertain if the hardship is bona fide.  The judgment of divorce Brooks supplied to the Plan (Pa68) did not set forth that he had any responsibility for

8

medical expenses for anyone.

It is evident that the Plan expected that such information would be supplied by the participant as the form sets forth a section to be filled out explaining the nature of the  hardship and the financial condition of the employee which entitled him to receive an immediate withdrawal.  This section of the form was left blank by Brooks (Pa440).  At that point, July 11, 2011, the Plan had not yet received the amended judgment of divorce with the Judge's Order as to alimony, child support, payment of medical insurance premiums and equitable distribution.  All the Plan knew was that Brooks was divorced.  The amended judgment of divorce of July 26, 2011 did not provide for payment of past or present medical bills or call for any immediate medical treatment (Pa71-76).

It does not appear in this record that Brooks presented any medical bills, doctors' notes, reports or other proofs for the Plan to consider in assessing the bona fide nature of the hardship or the amount of the distribution necessary to satisfy that hardship.

It is also curious that when the hardship application form was sent to Brooks by the Plan, the amount was already typed in on the form and it coincidentally amounted to one-half of the balance in Brooks' account (Pa435).  The original June 30, 2011 letter (Pa434) from the Plan to Brooks anticipated that this was to be only a regular withdrawal (Pa434) pursuant to Article VII, ¶¶7.1 to 7.4 of the Plan (Pa388).  This is evidenced by the fact that apparently the additional hardship withdrawal form was not sent to Brooks until July 6, 2011 (Pa436).  According to the discovery thus far, the Plan has no written or recorded statements of any persons involved in this litigation (answer to interrogatories 1 and 2, Pa480-481), nor have they taken or collected any statements from any witnesses (answer to interrogatory 9, Pa483).  As to any representations or

communications relating to this transaction, the Plan identified only the Brooks' hardship application and correspondence and the certification signed by Brooks at the bottom of the July 6, 2011 letter (interrogatory answer 9, Pa483).  The Plan listed no admissions of any party or declarations against interest of any witness as having been made (see answer to interrogatories 7 and 8, Pa482-483).

In response to plaintiff's interrogatory number 1 requesting the names and addresses of persons possessing knowledge of relevant facts to this case and the information possessed, the Plan responded that none of the Trustees had any contact with Brooks.  The person who worked at the Fund office in the capacity as field representative, a Mr. Crowther (who is also a Trustee), may have had a telephone conversation with Brooks as to documentation needed for his application, but he could not specifically recall.  It is unclear whether the administrator had any direct contact with Brooks as he is listed as only having "knowledge of Mr. Brooks' interest in the SRP and his hardship application" (see answer to interrogatory 1, Pa480-481).

In response to plaintiff's interrogatory number 11 which requested the names and addresses of all employees, servants, agents or representatives of the Plan to whom Gary Brooks spoke, either personally or by phone concerning his withdrawal of funds from the Plan, what was said to all parties to the conversations and when and where the conversations took place, the Plan responded as follows:

> 11.    ANSWER:    While not absolutely certain, Administrator Thomas J. McNulty believes that Mr. Brooks called the Fund offices to request hardship application documentation in mid-2011, and such documentation was prepared for Mr. Brooks, who personally came to the Fund Offices at Southampton Road, Philadelphia, PA, to accept and submit the forms.  Mr. Crowther, in his capacity as Field Representative, would most likely have been the individual to field a call from Mr. Brooks, but does not specifically recall speaking to Mr. Brooks.

Neither Mr. Crowther nor Mr. McNulty recall any specifics of any conversations with Mr. Brooks, but can confirm that the substance of Mr. Brooks contact with the SRP centered on requirements to withdraw funds from the SRP, transmit address information, and similar administrative requirements.

None of the remaining Fund Defendants spoke with Mr. Brooks at any time.  No other agent or representative, including counsel for the SRP, spoke with Mr. Brooks at any time.   (Pa483-484)

Thus, whoever reviewed the application submitted by Brooks had no information or facts to consider as to the bona fide nature of the request except the application with the checked off box for medical expenses.

A request was made by plaintiff for Brooks' personnel file (notice to produce number 5, Pa486-487).  The Plan responded that it had none, but it did have a file on requests by Brooks for funds from the Plan and attached to its answers all non-privileged documents (answer to document request number 5, Pa 486-487).  The only document produced was the application with the checked off box for medical expenses devoid of any explanation of the facts or circumstances (Pa440).

ERISA imposes broad fiduciary responsibilities on plan trustees and administrators and extensively regulates their conduct.  29 U.S.C. §§1104-1114.  Plan fiduciaries must discharge their duties solely in the interest of plan participants and their beneficiaries, see 29 U.S.C. §1104(1)(A), and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  29 U.S.C. 1104(1)(B).

ERISA also requires the plan administrator to act in accordance with the documents and instruments governing the plan insofar as the documents and instruments are consistent with the statutory ERISA requirements.  29 U.S.C. §1104(a)(1)(D); Hlinka v. Bethlehem Steel, 863 F.2d

11

279, 286 (3rd Cir. 1988).  If a plan administrator fails to follow the plan documents and instruments, he will breach his fiduciary duty to the plan participants and beneficiaries.  An award inconsistent with the plan's valid provisions would be a breach of these duties.  Vitale v. La Trobe Area Hospital, 420 F.3d 278, 283-284 (3rd Cir. 2005); Sullivan v. AT&T Corp., 372 Fed. Appx. 334*3 (3rd Cir. 2010).

The procedure followed by the Plan administrator once he received the copy of the divorce judgment did not conform with the prudent man standard governing the discharge of a plan fiduciary's duties.  26 U.S.C. §1104(a).

From the records produced by the Plan in discovery, it knew at the time Brooks presented the judgment of divorce in late June 2011 that (1) he was married at least since 1995 and had three children, two of whom were under the age of 18 (Pa489-490; 493-496), (2) he had rolled over in 2009 into another qualified plan $40,598 (which represented one half of his plan funds at the time and which had to be consented to by the plaintiff as his spouse (Pa493-494); (3) he had taken a withdrawal from a vacation fund in 2009 of $1,472.00 because of some financial difficulties which are not explained (Pa491-492); and (4) he had not previously taken a hardship withdrawal or any other withdrawals from the Plan (Pa497).

At this point, it is unknown if the fiduciaries or employees of the Plan knew Brooks was in jail but since he was an active member of the union, one can reasonably infer it kept abreast of its members' status.

From the fact that the Plan asked Brooks to sign a statement declaring plaintiff had no interest in the Plan, one can infer that it seemed unusual to the Plan administrator and fiduciaries that there would be no equitable distribution of the Plan set forth in the divorce complaint,

12

especially since Brooks also had a defined benefit pension plan through the union (PSF5b; Pa106-110).  This is further supported by defendant Makowski's statement that the attorney for the Plan advised him that the Plan suspected that something was not right with the divorce judgment but they did not contact him to determine if plaintiff had an interest (PSF80).

Just based upon what is known thus far, a prudent fiduciary who, according to the Plan's attorney, would have contacted Brooks' attorney if he was represented to verify if plaintiff had any interest in the Plan (Pa503, ¶2; PSF79), should have contacted defendant Makowski at the phone number and address on the judgment of divorce to verify the claim of Brooks that plaintiff did not have an interest.

Brooks was expelled from the union for, according to the Plan's attorney, this act as well as other things (Pa503, ¶3).  The other things have not been identified.  If they were acts of dishonesty, fraud or deceit occurring prior to the subject withdrawal, those facts may have a bearing on what a prudent fiduciary would have done under the circumstances.

ERISA provides for court review under a de novo standard unless the plan gives the administrator fiduciary discretionary authority (as in this case [PSF54]) to determine eligibility for benefits or to construe the terms of the plan.  Firestone Tire v. Bruch, 489 U.S. 101, 115 (1989).  Where the plan affords the administrator or fiduciary discretion in an area of authority, the administrator's interpretation of the plan will not be dismissed if reasonable.  Mitchell v. Eastman Kodak, 113 F.3d 433, 437 (3rd Cir. 1997).  In other words, when a plan administrator or fiduciary has discretion to determine a claimant's eligibility for benefits, the plan administrator's decision is subject to review under an arbitrary and capricious standard.  Doroshow v. Hartford Life, 574 F.3d 230, 233 (3rd Cir. 2009).  Under the arbitrary and capricious standard, the claim

determination will be upheld if it is supported by substantial evidence.

Under a traditional arbitrary and capricious review, a court can overturn a decision of a plan administrator or fiduciary only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.  Id. at 234.

Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Chandler v. Social Security, 667 F.3d 356, 359 (3rd Cir. 2011).  Even if the factual findings are supported by substantial evidence, a court may review whether in making the findings, the administrator or fiduciary applied the correct legal standards to the facts presented.  Freeburg v. Schweiker, 721 F.2d 445, 447 (3rd Cir. 1983).  The court looks to the record as a whole and the whole record consists of evidence that was before the administrator when the decision being reviewed was made.  Mitchell v. Eastman Kodak, supra, 113 F.3d at 440.  Although the arbitrary and capricious standard is extremely deferential, it is not without some teeth.  Deferential review is not no review and deference may not be abject.  Moskalski v. Beyer Corp., 2008 W.L. 2096892 (W.D. Pa. 2008) at *4 and n.3.

Technically, violations of the IRC merely result in the loss of preferred tax treatment for the plan, including the employer's deduction for contributions under IRC §401(a) and the employee's tax deferral under IRC §402(a).  However, because this provision was deliberately designed to parallel those of the IRC, the courts treat these claims as arising under ERISA and as brought pursuant to ERISA's right of action provision, 29 U.S.C. §1132.  Courts have also noted that ERISA provides that regulations promulgated by the Treasury Department pursuant to IRC §§410(a), 411 and 412 (special rules for plans qualified under §401(a)) are deemed applicable to

14

parallel provisions of ERISA.  29 U.S.C. §1201(c).  Rybarczyk v. TRW, Inc., 235 F.3d 975, 981, n.8 (6th Cir. 2000).

Here, the approval of Brooks' hardship withdrawal was arbitrary, capricious as it was not based upon anything in the record, other than a checkmark in a box on the application stating the withdrawal was for medical expenses.  There are no facts or circumstances set forth in the record to review.  There are no reports from the co-chairman of the Board of Trustees who are responsible for approving hardship applications in the first instance or evidence that the co-chairman ever considered the application.  The only mention of the involvement of the co-chairman is in the minutes of the September 23, 2011 Trustees' meeting (Pa447-454) which states, "Trustees were informed the following hardship withdrawals were approved by the co-chairman and disbursed since the last Trustees' meeting:" (in June 2011) (Pa450).  A list of 56 names with the account balances and amounts withdrawn (including Brooks') is then listed in the minutes but there is no indication if the Board of Trustees considered any specific information in reference to the hardship requests.  The minutes also reflect no regular hardship withdrawals considered at the meeting.  It seems odd that a union plan with 1,759 members (Pa414, line e) would have 56 hardship withdrawals granted in the three months after the June board meeting (that's over 3% of the membership) totaling $750,113.00, and no regular withdrawals (Pa450).

Brooks' hardship application itself is signed by the administrator (Pa439).  The only document, dated July 13, 2011, which references an approval is a cash disbursement sheet with some unintelligible writing in the "approved" box (Pa443). The check was mailed to Brooks by letter dated July 13, 2011 signed by the administrator (Pa444).  The letter states that disbursement is subject to the ten percent penalty and is subject to tax in the year received.  The

Plan also withheld twenty percent of the distribution and advised a 1099-R would be sent to the government.

If, in fact, the disbursement was for medical expenses, it would not have been subject to the ten percent additional tax on distributions prior to age 59-1/2 as there is an exception for medical expenses to the extent that the distributions do not exceed the amount allowable as a deduction under IRC §213 to the employee for amounts paid during the taxable year for medical care (determined without regard as to whether the employee itemizes deductions for such taxable year). 26 U.S.C. §72(t)(2)(B). Further, hardship distributions are not subject to mandatory withholdings because they do not qualify as eligible rollover distributions. 26 U.S.C. §402(c)(4)(C). They are subject to elective withholding, which requires ten percent of the distribution be withheld unless the participant elects not to have the withholding applied. 26 U.S.C. §3405(b)(1) and (2).

Is there any doubt that if a participant in a plan filed a disability application based upon a mere representation that he was disabled, that a plan would or could approve such an application absent medical proof. This case is no different. This case presents the perfect example of a mere scintilla of evidence.

Had the hardship application not been granted, Brooks' request would have been treated under the Plan as an application for a regular distribution which was subject to approval of the Board of Trustees at their next regular quarterly meeting on September 23, 2011. Thus, at the time the Plan office received notice of the amended judgment of divorce, which was prior to August 24, 2011, which was considered a domestic relations order, or the draft QDRO reached their office in or about September 8, 2011, the Plan would have been aware that plaintiff had

16

some interest in the fifty percent of the Plan account characterized by the Plan as Brooks' share and that it was subject to further court proceedings.  Receipt of notice of the amended judgment of divorce by the Plan constituted the beginning of the qualification process of the domestic relations order contemplated by ERISA.

An alternate payee has an interest in a plan when a domestic relations order is entered.  The QDRO provisions of ERISA merely prevent enforcement of that already existing interest until the QDRO is obtained.  Files v. Exxon Mobile Pension Plan, 428 F.3d 478, 489 (3rd Cir. 2005).  Once the plan receives notice of the domestic relations order, the qualification process begins.  Id.  When a plan receives a domestic relations order, it has a reasonable period to determine if it qualifies.  Id.  The statute requires that each plan establish reasonable procedures to determine qualified status.  Id.  See 29 U.S.C. 1056(d)(3)(G)(ii)(I-III).  The statute requires the plan to take steps for the preservation of benefits that are otherwise payable while the determination of QDRO status is undertaken.  Id.

In that regard, during the first 18 months after which benefits become payable, the plan must segregate the benefits potentially (emphasis added) to the alternate payee.  Id.  See 29 U.S.C. 1056(d)(3)(H)(v).  Moreover, ERISA contemplates further court proceedings during the 18 month QDRO determination period in which the alternate payee can cure defects in the original domestic relations order by obtaining modification to the original domestic relations order in order to enforce it as a QDRO.  Id.  See 29 U.S.C. 1056(d)(3)(H)(ii).  Once the plan is on notice that a domestic relations order has been issued that may be a QDRO, the plan must put the required qualification process in motion and maintain the status quo.  Johnson v. Nanticoke Memorial Hospital, 700 F.Supp.2d 670, 677 (D. Del. 2010), citing Winters v. Kutrip, 47 Fed.

Appx. 143, 147 (3rd Cir. 2002).

For claims procedures to be reasonable under a plan, the plan must contain administrative processes that safeguard its design to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.  29 C.F.R. §2560.503-1(b)(5).

The plan document itself requires that while a domestic relations order's qualifying status is being determined, the administrator shall segregate <u>any benefits in dispute</u> (emphasis supplied) in an interest bearing escrow account established by the Trustees for this purpose (Pa398, ¶9.10; PSF 92C).

The domestic relations order sent by Makowski on September 8, 2011 specifically set forth that the funds in dispute were the fifty percent of the account balance not awarded to plaintiff which were not to be distributed to Brooks without further order of the court (Pa87, ¶3). This is in accord with the amended judgment of divorce (Pa74-75, ¶13), which was already in possession of the Plan and stated a QDRO would follow.

A plan, beyond ERISA, can set forth a period of time (a freeze) to hold distributions from the plan to a plan participant while a draft domestic relations order is being considered.  <u>National City Corp. v. Ferrell</u>, 2005 W.L. 2143984 *7 n.6 (ND W.Va. 2005); see also, <u>Unicare v. Phanor</u>, 472 F.Supp.2d 8 (D. Mass. 2007) - domestic relations order freezing right of participant to change beneficiary of life insurance policy until determination of alimony and child support in a divorce action was a QDRO although not all information was contained in the order since it was otherwise readily ascertainable.

Thus, the draft QDRO submitted by Makowski was an acceptable QDRO. The Plan's attorney admitted this in his letter to Makowski absent the freeze language (PSF78).  However, even it if were not, the plaintiff's attorney would have had 18 months to present an acceptable one.

Since the Supreme Court decision in <u>Metropolitan Life v. Glenn</u>, 554 U.S. 105 (2008), 128 S.Ct. 2343 (2008), evidence of procedural abnormalities or some other bias is to be considered a factor in determining whether a fiduciary's decision is arbitrary and capricious. <u>Shvartsman v. Long Term Disability</u>, 2012 W.L. 2118126 *8 (D. N.J. 2012) (Bongiovanni, J.); <u>Kosiba v. Merck</u>, 384 F.3d 58, 64-67 (3rd Cir. 2004); <u>Pinto v. Reliance Standard</u>, 214 F.3d 377, 393-395 (3rd Cir. 2000); <u>Estate of Schwing v. Lilly Health Plan</u>, 562 F.3d 522, 526 (3rd Cir. 2009) - "as <u>Glenn</u> recognized, benefits determinations arise in many different contexts and circumstances and therefore the factors to be considered will be varied and case-specific.  <u>Glenn</u>, 128 S. Ct. at 2351.  In <u>Glenn</u>, factors included procedural concerns about the administrator's decision-making process.  All the factors must be weighed to determine if the decision was arbitrary and capricious.  A procedural inquiry focuses on how the fiduciary treated the particular claimant - <u>Miller v. American Airlines</u>, 632 F3d 838, 845 (3rd Cir. 2011) citing <u>Post v. Hartford</u>, 501 F.3d 154, 162 (3rd Cir. 2007).

If the standard of review is to be meaningful, the Court must consider evidence relating to the nature, extent and effect on the decision making process of any procedural irregularities. <u>Howley v. Mellon Financial</u>, 625 F.3d 788, 794 (3rd Cir. 2010).

Reliance on inadequate information or incomplete or lax investigation can constitute a procedural irregularity.  <u>Fries v. Reliance Standard</u>, 122 F.Supp.2d 566, 574-575 (E.D. Pa.

19

2000); Sweeney v. Standard Insurance, 276 F.Supp.2d 388, 395 (E.D. Pa. 2003).

### Remedy

Premature payment to a participant does not relieve a plan of its obligation to pay a beneficiary from the plan funds. Kopec v. Kopec, 70 F.Supp.2d 217, 220 (E.D. NY 1999).

Under Count 2 of the Complaint, plaintiff alleges a cause of action against the Plan, Administrator and individual Trustees under 29 U.S.C. §1132(a)(1)(B) to recover benefits due her under the terms of the Plan, to enforce her rights under the terms of the Plan or to clarify her future rights under the terms of the Plan. She requests compensatory damages, pre-judgment interest and attorney's fees and costs.

The Fund erroneously released to Brooks monies due to plaintiff for child support arrears and future child support (Pa80, Superior Court Order of October 21, 2013). Amounts due for child support, alimony or marital property rights can be paid from the Plan pursuant to a QDRO without violating the anti-alienation provisions of ERISA, 26 U.S.C. §414(p)(1)(B); 29 U.S.C. §105(6)(3)(B)(ii).

Had the Plan not erroneously paid Brooks, these funds would have been in the Plan at the time of presentation to the Plan of the amended judgment of divorce and draft QDRO. They are benefits to which the plaintiff was entitled under the Plan and the Plan must, therefore, pay them to the plaintiff, with interest. Plaintiff should have the opportunity to rollover these sums into her IRA as permitted by the Bankruptcy Trustee so she avoids any immediate income tax consequences. Plaintiff also, under Counts 3 and 4, claims the Plan fiduciaries by their conduct breached their fiduciary duties pursuant to 29 U.S.C. §1109(a) and thus, she states a cause of action under 29 U.S.C. §1132(a)(2). The fiduciaries under 29 U.S.C. §1109(a) are personally

20

responsible for the Plan losses from the breach , in this case the $24,856 paid to Brooks (Pa445; 450).

This action is cognizable under <u>LaRue v. DeWolf Boberg and Assoc., Inc.</u>, 552 U.S. 248, 128 S.Ct. 1020 (2008).  Equitable surcharges are permitted against fiduciaries under 29 U.S.C. §1109(a).  <u>Cigna Corp. v. Amara</u>, 131 S.Ct. 1866 (2011).  The surcharge consists of monetary compensation to remedy a loss resulting from a breach of duty.

Plaintiff is also entitled to interest on the delayed payment of the benefits based on the breach of fiduciary duty.  <u>Fotta v. Trustees of Un. Mine Wkrs.</u>, 319 F.3d 612 (3rd Cir. 2003), <u>cert. den</u>,. 540 U.S. 982 (2003); <u>Skrelvedt v. E.I. DuPont</u>, 372 F.3d 193 (3rd Cir. 2004).  The delay is the result of a violation of ERISA and the terms of the Plan.  <u>Fotta</u>, <u>supra</u>, 319 F.3d at 617.

Plaintiff also requests that counsel fees and costs be awarded upon application of her attorney pursuant to 29 U.S.C. §1132(g)(1).

POLINO and PINTO, P.C.


By: /s/   Joseph M. Pinto
     Joseph M. Pinto, Esquire
Date:   December 20, 2013     Attorney for Plaintiff

21