```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY


JENNIFER A. GALLAGHER,          :    Civil No. 13-1103 (JEI/AMD)
                                :
          Plaintiff,            :
                                :              OPINION
          v.                    :
                                :
JOHN M. MAKOWSKI, et al.,       :
                                :
          Defendants.           :
```

**APPEARANCES**:

POLINO AND PINTO, P.C.
By:  Joseph M. Pinto, Esq.
Moorestown Times Square
720 East Main Street, Suite 1C
Moorestown, New Jersey 08057
          Counsel for Plaintiff

JOHN M. MAKOWSKI, ESQ., *pro se*
Greentree Executive Campus
4003 Lincoln Drive West, Suite C
Marlton, New Jersey 08053
          Counsel for Defendant Makowski

JACOBY DONNER, PC
By:  Liam Y. Braber, Esq.
1700 Market Street, Suite 3100
Philadelphia, Pennsylvania 19103
          Counsel for the Fund Defendants


**IRENAS,** Senior United States District Judge:

   This suit arises out of Plaintiff Gallagher's divorce in 2011. Shortly after the divorce, Gallagher's ex-husband, Gary Brooks, withdrew money from his union's Supplemental Retirement Plan ("SRP")

1

account which Gallagher asserts was legally hers pursuant to the terms of their divorce decree.

Gallagher asserts a malpractice claim against her divorce attorney, Defendant Makowski, for allegedly failing to adequately protect her interest in the money.

Gallagher also asserts ERISA claims against the Fund Defendants-- Plumbers Local Union 690 Supplemental Retirement Plan; the plan's Administrator, Thomas J. McNulty; and Trustees John I. Kane, Thomas J. Crowther, Timothy J. Brink, Howard Weinstein, and John J. Bee-- asserting that they breached the Plan provisions and their fiduciary duties when they erroneously allowed Brooks to withdraw the money.

Presently before the Court are: (1) Makowski's Motion for Summary Judgment; (2) the Fund Defendants' Motion for Summary Judgment; and (3) Gallagher's Cross-Motion for Summary Judgment against the Fund Defendants.

For the reasons stated herein, Makowski's motion will be denied in part and denied without prejudice in part; the Fund Defendants' motion will be granted in part and denied in part; and Gallagher's cross-motion will be granted in part and denied in part.

I.

In August, 2010, Gallagher retained Makowski to represent her in her divorce suit against her husband, Gary Brooks. (SUF ¶ 2)  Over four days in June, 2011, the case was tried before the Honorable Charles M. Rand, P.J.F.P. (SUF ¶ 3).  On the last day of trial, Judge

Rand rendered an oral decision on the record. (Id.) That same day the judge signed a Judgment for Divorce, which was drafted by Defendant Makowski. (Makowski Ex. A; SUF ¶ 6)

According to Makowski, the court "required that a Judgment of Divorce limited to dissolution and name change be signed the day the divorce is made final[,] with an Amended Judgment of Divorce on all remaining issues prepared and entered on a later date." (Makowski Moving Brief, p. 1) A month later, on July 26, 2011, Judge Rand signed the Amended Judgment of Divorce, which was also drafted by Makowski. (Makowski Ex. B; SUF ¶ 6) The relevant portion of the Amended Judgment provides,

> 13. The date of complaint balance and all accrued interest in the Defendant's Local 640 Supplemental [Retirement] Plan ["SRP"] with his union will be divided equally between the parties utilizing a Qualified Domestic Relations Order. The cost of the QDRO will be divided equally between the parties. The Defendant's one half interest in this plan will be frozen by the Plan Administrator pursuant to the provisions of this Order until further order of the Court.

(Makowski Ex. B)

Unfortunately, in the interim between the entry of the Judgment of Divorce and the Amended Judgment of Divorce, Gary Brooks withdrew his half of the SRP funds, which the parties do not dispute, was supposed to be frozen.

When Brooks made his request to withdraw, Defendant Thomas McNulty, the Plan Administrator, responded by letter dated July 6, 2011:

3

>Dear Mr. Brooks:
>
>Thank you for furnishing us with your Divorce Decree . . . effective June 27, 2011. We understand that you are seeking to make a withdrawal from the Plumbers Local Union No. 690 Supplemental Retirement Plan (SRP).
>
>We are prepared to allow you to make this withdrawal, consistent with the terms of the SRP, provided that you confirm that there is no property settlement agreement in effect, or other understanding, by which your former spouse, Jennifer A. Brooks [Gallagher], is entitled to receive some or all of your account balance in the SRP and which might limit the amount you can withdraw from the SRP at this time.
>
>On the line indicated below, please confirm that your former spouse is not entitled to an assignment of any portion of your SRP as a result of your divorce proceeding. After you confirm this by signing and dating below, we will initiate the withdrawal process. Thank you.

(Fund Defs' Ex. B) Brooks signed the letter and dated it July 8, 2011.

He also completed the Plan's "Supplemental Retirement Special Hardship Withdrawal Additional Information Form." (Fund Defs' Ex. B) The form specifies, "hardship withdrawals may be given only for the following reasons (must check one)." (Id.) Brooks checked the box corresponding to "medical expenses . . . incurred by . . . any dependents of the participant." (Id.)[1] The form further directed, "PLEASE EXPLAIN IN THE SPACE BELOW THE FINANCIAL CONDITION WHICH REQUIRES YOU TO RECEIVE AN IMMEDIATE HARDSHIP WITHDRAWAL FROM THE

---

[1] The undisputed record demonstrates that the SRP knew that Brooks had three "eligible dependents"-- "his unmarried children under 19 years of age"-- at the time of his request. (Pl's App'x 490)

4

[SRP]." (Id.; caps in original)  Brooks did not explain; the space for explanation was left blank. (Id.)  The form is stamped "received" by the Fund on July 11, 2011. (Id.)

On July 13, 2011, the Funds issued a check payable to Gary Brooks in the amount of $19,884.80, which represented half of his account balance less 20% federal income tax withholding and the applicable early withdrawal fee. (Fund Defs' Ex. B)

Sometime prior to August 16, 2011, Makowski learned of Brooks' withdrawal. (Makowski Ex. C)  In response to Makowski's inquiry to the Funds, the Funds' attorney, William Denmark, wrote to Makowski on August 24, 2011, explaining the circumstances under which Brooks' withdrawal occurred and stating that the remaining one-half balance was available for distribution to Gallagher upon submission of the appropriate documentation, including an appropriate QDRO. (Id.)

On October 3, 2011, Judge Rand signed the QDRO "resolv[ing] and specif[ying] the extent of [Gallagher's] interest in [the SRP]." (Makowski Ex. F)  The QDRO directs the Funds to "segregate and pay a portion of [Brooks'] account under the [SRP] to [Gallagher] equal to one half or fifty (50%) percent [sic] of the account balance as of [the date of the divorce complaint]." (Id.)[2]

---

[2]  Makowski's earlier draft of the QDRO included a provision, consistent with paragraph 13 of the Amended Judgment of divorce, that Brooks' half of the account balance be frozen.  However, that provision was later deleted after correspondence with the Funds' attorney, Mr. Denmark.  (Pl's App'x p. 92)

5

On October 21, 2011, Judge Rand signed another order, which states, in relevant part,

> The Defendant, Gary P. Brooks, willfully and purposely removed the amount of $23,000.00 from his Plumbers Local Union No. 690 Supplemental Retirement Plan account. In accordance with ¶ 13 of the Amended Judgment for Divorce dated July 26, 2011, said funds representing his share of retirement funds to be divided by a Qualified Domestic Relations Order were to be frozen for use to pay child support owed and to be owed by the Defendant. Therefore, a Judgment is hereby entered against the Defendant, Gary P. Brooks in favor of the Plaintiff, Jennifer A. Brooks, a/k/a Jennifer A. Gallagher in the amount of $23,000.00. Said Judgment represents child support and is not dischargable in bankruptcy. The Defendant, Gary P. Brooks, is in contempt of court and a warrant for his arrest is hereby issued with a purge amount of $23,000.00.

(Makowski Ex. G) (emphasis added).

On November 9, 2011, the Funds paid Gallagher the remaining balance in Brooks' account.[3]

On June 14, 2012, Gallagher filed a Chapter 7 Voluntary Bankruptcy Petition in U.S. Bankruptcy Court. It is undisputed that she did not list her current malpractice claim against Makowski, nor her claims against the Fund Defendants, on the relevant bankruptcy schedules. On September 14, 2012, the Honorable Judith H. Wizmur,

---

[3] It should be noted that in an earlier order, this Court stated that this suit arose out of two alleged withdrawals that Gallagher's ex-husband made from his pension account. That statement was the result of the Court's attempt to understand a somewhat unclear and sometimes contradictory Fourth Amended Complaint. Now, based on the documents in the summary judgment record and the parties' briefs, it appears that Brooks made only one withdrawal (not two) and that withdrawal was from his SRP account (not his pension account).

U.S.B.J., signed the order discharging Gallagher's debts and closing the bankruptcy case.

Gallagher filed this suit in New Jersey state court on October 11, 2012. Upon addition of the ERISA claims against the Fund Defendants, the case was removed to this Court on February 25, 2013.

The Fourth Amended Complaint asserts four counts. Count One is Gallagher's legal malpractice claim against Defendant Makowski. Count Two asserts a claim against the Fund Defendants pursuant to ERISA for recovery of benefits. Counts Three and Four assert ERISA claims against the Fund Defendants for breach of fiduciary duty.

Makowski asserts cross-claims for indemnification and contribution against the Fund Defendants, and the Fund Defendants assert the same cross-claims against Makowski. Makowski also asserts a counterclaim against Gallagher for unpaid legal fees.

The parties' motions for summary judgment on the direct claims only (i.e., not the cross-claims, nor the counterclaim) are presently before the Court.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. See *Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d

Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 252.

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).[4]

### III.

The Court addresses Makowski's motion, then addresses the Funds' motion and Gallagher's attendant cross-motion.

### A.

Makowski makes two related arguments.  First, he argues that the Court should apply the doctrine of judicial estoppel to preclude Gallagher from pursuing her legal malpractice claim (Count 1 of the Fourth Amended Complaint) because she failed to list her accrued claim as an asset on her bankruptcy schedule.

---

[4]  Discovery has been stayed pending the outcome of the instant motions.

8

Second, Makowski asserts that Gallagher cannot pursue the pre-petition legal malpractice claim because it belongs to the Chapter 7 Trustee, who is the real party in interest.

The Court addresses each argument in turn.

### 1.

Makowski acknowledges that the decision to apply judicial estoppel is discretionary. *See In re Kane,* 628 F.3d 631, 638 (3d Cir. 2010) ("Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion."); *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). He argues that a favorable exercise of this Court's discretion is warranted in this case. The Court disagrees.

> Three requirements must be met before a district court may properly apply judicial estoppel. First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith--i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Bulger*, 243 F.3d at 779-80 (internal citations and quotations omitted).

Judicial estoppel is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1); therefore, Makowski bears the burden of proof.

9

Assuming *arguendo* that Gallagher's failure to list her malpractice claim on the relevant bankruptcy schedule is irreconcilably inconsistent with the pursuit of that same claim here, the Court concludes that the record evidence does not support a finding that Gallagher acted in bad faith.

The record evidence Makowski cites in support of his bad faith argument is sparse at best, and would not necessarily lead a reasonable factfinder to conclude that Gallagher acted with the intent to play fast and loose with either the Bankruptcy Court or this Court.

Gallagher filed her bankruptcy petition with the relevant schedule on June 14, 2012.  (Makowski Ex. M)  Nothing in the record supports a conclusion that Gallagher knew, on that day, that she had a malpractice claim against Makowski.  Indeed, viewing the record evidence in the light most favorable to Gallagher, a reasonable juror could conclude that Gallagher, in fact, did not know.

Gallagher's current counsel, Joseph Pinto, states in his certification,

> I interviewed plaintiff on July 3, 2012 concerning pursuing collection of the funds taken by her ex-husband from the Plumbers Union Local 690 Supplemental Retirement Plan.  I received her bankruptcy petition and other documents related to her divorce case, and believed that, besides a possible appeal to the Pension Plan concerning the monies that had been withdrawn . . . she might also have a cause of action against [Makowski] for malpractice.

(Pinto Cert. ¶ 2)

10

From this evidence a reasonable juror could infer that Gallagher did not know she had a claim against Makowski until she consulted an attorney, which did not occur until after she filed her bankruptcy petition.

Makowski argues that Gallagher's failure to amend her bankruptcy schedule to include the claim once she did know about it evidences bad faith. However, Mr. Pinto's Certification details the lengths to which he, on behalf of his client, Gallagher, went to get Gallagher's bankruptcy counsel, Eric Kishbaugh to amend the petition, but to no avail. (Pinto Cert. ¶¶ 5-8) Such evidence at least raises an issue of material fact as to Gallagher's bad faith.

Lastly, Makowski argues that several of Gallagher's legal arguments in opposition to the instant motion are entirely meritless and therefore support the conclusion that Gallagher is pursuing her legal malpractice claim in bad faith. The Court rejects Makowski's argument. Asserting an unmeritorious legal position is not tantamount to bad faith.

The Court concludes that applying judicial estoppel is not appropriate in this case.[5] Makowski's Motion for Summary Judgment in this regard will be denied.[6]

---

[5] In light of this holding, the Court does not reach Gallagher's argument that the state court decided the judicial estoppel issue in her favor prior to removal, and therefore Makowski is bound by the law of the case.

[6] After Makowski filed his Motion for Summary Judgment, the Fund Defendants informed the Court by letter that they joined in the motion because it is undisputed that Gallagher failed to list on her

**2.**

Makowski also argues that, by virtue of Gallagher's bankruptcy filing and her failure to schedule the instant malpractice claim, the claim belongs to the United States Trustee, not Gallagher.  Thus, Makowski reasons, pursuant to Fed. R. Civ. P. 17(a), the claim must be prosecuted by the Trustee, as the real party in interest.

Makowski's Motion for Summary Judgment on this issue will be denied without prejudice.  The Trustee may elect to pursue this claim or he may not.  If the Trustee chooses to abandon the claim, then Gallagher may continue to pursue the claim in her own right.

The Court will order Gallagher to give notice of the malpractice claim against Makowski to the Trustee.  If the Trustee wishes to prosecute this claim, he may take the appropriate steps to do so.

In any event, this issue affects neither Makowski's potential liability nor any damages that may be assessed against him.  Therefore, judgment in his favor is inappropriate.

**B.**

Counts 2 through 4 of the Fourth Amended Complaint are the ERISA claims against the Fund Defendants.  Counts 3 and 4 assert breach of fiduciary duty claims for relief pursuant to 29 U.S.C. § 1109(a) (see Fourth Amend. Compl. ¶¶ 42, 45, 66); and Count 2 asserts a claim

---

bankruptcy schedule her claims against the Funds.  The Court's holding as to judicial estoppel applies equally to the Fund Defendants; their Motion for Summary Judgment on estoppel grounds will be denied.

pursuant to 29 U.S.C. § 1132(a)(1) to recover benefits allegedly due Gallagher under the terms of the Plan.

The Court addresses Counts 3 and 4 before turning to Count 2.

### 1.

Section 1109(a) provides in relevant part,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by this title shall be personally liable to make good *to such plan any losses to the plan* resulting from each such breach, *and to restore to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

(emphasis added).[7]

Counts 3 and 4 fail to state a claim because Gallagher does not allege that the SRP suffered any loss. Gallagher merely asserts that the Fund Defendants paid the wrong person.

When a plan participant or beneficiary seeks damages under ERISA for losses that she, as an individual-- rather than the plan-- allegedly suffered, she has failed to state a claim for relief under § 1109(a). *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action

---

[7] 29 U.S.C. § 1132(a)(2) provides, "a civil action may be brought . . . by a beneficiary . . . for appropriate relief under [29 U.S.C. § 1109]."

is plainly not authorized by [§ 1109]."); *Fox v. Herzog Heine Geduld, Inc.*, 232 F. App'x 104, 105 (3d Cir. 2007) ("The District Court . . . correctly held that plaintiffs could not state a claim for monetary damages for breach of fiduciary duty under ERISA, absent a 'loss to the plan' as opposed to a loss suffered by individual beneficiaries or a subclass of beneficiaries."); *see generally Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140 (1985) (stating that an ERISA suit for breach of fiduciary duty "inures to the benefit of the plan as a whole," and observing that Congress was concerned with fiduciaries' "misuse and mismanagement of plan assets.").[8]

As to the breach of fiduciary duty claims, the Fund Defendants' Motion for Summary Judgment will be granted and Gallagher's cross-motion will be denied.

**2.**

Section 1132(a)(1)(B) provides, in relevant part, "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future

---

[8] *See also Walker v. Federal Express Corp.*, 492 F. App'x 559, 563 (6th Cir. 2012); *Smith v. Medical Benefit Administrators Group, Inc.*, 639 F.3d 277, 282 (7th Cir. 2011); *Wise v. Verizon Communications, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010); *Clark v. Bd. of Trs. S.S. Trade Ass'n*, 1990 U.S. App. LEXIS 27020 at *8 (4th Cir. 1990); *Placzek v. Strong*, 868 F.2d 1013, 1014 (8th Cir. 1989); *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 638-39 (D.N.J. 2010) (Simandle, D.J.) ("This claim, as presented, is not cognizable under ERISA because . . . the statute does not permit recovery for damage to an individual that does not harm plan assets.").

benefits under the terms of the plan." Gallagher asserts that under the terms of the SRP, "Brooks' application for a [financial] hardship distribution should not have been approved." (Opposition / Cross-Moving Brief, p. 7) She reasons that if the Fund Defendants had properly denied Brooks' request, his half of the money would have remained in the account, because it is undisputed that any other withdrawal Brooks could have made would have had to await approval by the Fund Trustees at the next quarterly meeting, which was to be held in September, 2011. (Fund Defs' Ex. B)[9]

The issue is whether the Fund Defendants properly concluded that Brooks had a "financial hardship" under paragraph 7.5 of the SRP.

The SRP gives the Fund Defendants "sole and absolute discretion to determine eligibility for benefits under this Plan, and to construe and interpret the provisions of the Plan . . . and to make factual determinations with respect thereto." (SRP ¶ 8.7) Therefore, the Court applies a deferential abuse of discretion standard of review. *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009). The Court will only overturn the benefits decision if it is arbitrary and capricious-- that is, if the Court

---

[9] The Fund Defendants' Motion for Summary Judgment assumes that Gallagher's theory of her case is that the decision to allow Brooks' withdrawal was erroneous because she had a legal right to Brooks' half of the account balance at the time of the withdrawal. However, Gallagher's opposition / cross-moving brief makes clear that her theory is different. (Opposition / Moving Brief, p. 4) She argues the decision was erroneous simply because Brooks had not sufficiently demonstrated a qualifying financial hardship, irrespective of her legal entitlement to the money at the time of the withdrawal.

15

concludes that the decision was not "within reason" or "[un]supported by substantial evidence." *Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir. 2002). If "there is sufficient evidence for a reasonable person to agree with the administrator's decision," the decision must stand. *Id.*

Gallagher argues that the decision to allow Brooks' hardship withdrawal was not supported by substantial evidence "because it was not based upon anything in the record, other than a checkmark box on the [withdrawal] application stating that the withdrawal was for medical expenses." (Opposition / Cross-Moving Brief, p. 15) Most notably, the Plan's own form specifically asked for an explanation of the participant's hardship, but in Brook's case, that section of the form was left blank. Gallagher argues the Administrator abused his discretion when he failed to, at the very least, require Brooks to fully complete the Plan's own forms before allowing the withdrawal.

The Court agrees. At oral argument, the Fund Defendants argued that the Administrator has no duty to independently verify the information Brooks provided to the SRP. To be clear, the Court is not ruling that such a duty exists. Indeed, such a duty would be onerous and costly. The Court merely holds that, under the factual circumstances of this case, it was an abuse of discretion to allow the hardship withdrawal without first requiring *Brooks* to provide *all* of the information that the Plan itself requires in order to make a decision.

16

The issue is not whether Brooks' representations should have been believed or verified, but rather-- assuming *arguendo* the truth of those representations-- whether they were sufficient.  The standard is whether the decision to allow the hardship withdrawal was supported by *substantial* evidence.  The Fund Defendants do point to *some* evidence-- namely, the undisputed evidence that the Fund Defendants knew Brooks had not worked since 2009, that he had three dependent children, and that he was recently divorced.  This evidence, however, does not rise to a "substantial" level because none of it serves to distinguish a general financial hardship, which is not grounds for immediate withdrawal under the Plan, from a dependent medical expense hardship, which is.

The lone piece of evidence in the record supporting the conclusion that Brooks' asserted hardship was a medical expense for one or more of his children is the box that he checked on the form. This evidence alone cannot reasonably support a conclusion that the evidence was substantial (i.e., that the Administrator's decision was not arbitrary and capricious) when the form itself requires an *explanation* of the "financial condition which requires [the participant] to receive an immediate hardship withdrawal."  (Fund Defs' Ex. B)

Accordingly, as to Count 2, the Fund Defendants' Motion for Summary Judgment will be denied and Gallagher's cross-motion will be granted as to liability.[10]

### IV.

In light of the foregoing, Makowski's motion will be denied in part and denied without prejudice in part; the Fund Defendants' motion will be granted in part and denied in part; and Gallagher's cross-motion will be granted in part and denied in part.  An appropriate Order accompanies this Opinion.


Date:  March 28, 2014                __s/ Joseph E. Irenas_____
                                     JOSEPH E. IRENAS, S.U.S.D.J.

---

[10]  On the present record, factual issues exist as to how much of Brooks' half of the SRP account Gallagher is entitled to.  The parties do not dispute that Brooks' half was to be frozen, and apparently do not dispute that the money was to be used to satisfy Brooks' child support obligations.  However, there is no evidence in the current record concerning the extent of Brooks' child support arrearages, if any, and his future support obligations.  Therefore, at this time, the Court cannot enter a judgment in Gallagher's favor.

18